NATIONAL MORTGAGE COMPANY, Ray–Lee Investment Company, and T.R. Smith, Appellants,

v.

Arnetta BRENGETTCY, Appellee.

No. 96–2282 ML/V.

United States District Court, W.D. Tennessee, Western Division.

Aug. 14, 1998.

---

Alex Saharovich, Nahon & Saharovich, Memphis, TN, John L. Ryder, Toni C. Parker, Steven N. Douglass, Apperson Crump & Maxwell, Memphis, TN, for National Mortgage Company, Ray–Lee Investment Company and T.R. Smith.

W. Otis Higgs, Higgs Armstrong White & Johnson, Memphis, TN, for Arnetta Brengettcy.

Jed G. Weintraub, United States Bankruptcy Court, Memphis, TN, Pro se.

George W. Emerson, Jr., Memphis, TN, Chapter 7 Trustee.

## ORDER REVERSING DECISION OF BANKRUPTCY COURT

McCALLA, District Judge.

On January 6, 1995, the bankruptcy court entered an order vacating its prior order, entered August 25, 1994, which validated the foreclosure sale of the property at issue in this matter. Appellants appeal from the decision of the bankruptcy court vacating its prior order. For the reasons set forth below, the Court REVERSES the decision of the bankruptcy court and REINSTATES the order validating the foreclosure sale.

### BACKGROUND

Debtor, Arnetta Brengettcy, resides at 1874 Meadowhill Street, in Memphis, Tennessee. National Mortgage Company [1] is the holder of the first mortgage on that property. Debtor originally filed Chapter 13 bankruptcy on October 9, 1984 in case number 84–23819, and that petition was subsequently dismissed. On January 10, 1986, debtor again filed Chapter 13 bankruptcy, which was discharged on July 2, 1991. Debtor then filed her third Chapter 13 bankruptcy plan on October 5, 1992, in case number 92–30773.

As a result of debtor's failure to maintain her payments in case number 92–30773, National Mortgage filed a Motion for Relief from Automatic Stay, which was heard by the bankruptcy court on December 21, 1992. At that time, debtor was in arrears to National Mortgage totaling $6,460.76. On December 21, 1992, United States Bankruptcy Judge Bernice Donald entered an order in case number 92–30773 that contained what is commonly known as a "drop dead clause," which stated that in the event that case number 92–30773 was dismissed, debtor was prohibited from refiling as to National Mortgage unless she was able to show a change of circumstances. *See* Appellant's Designation of Items to be Included on Appeal (hereinafter "Record on Appeal"), No. 1.

On January 25, 1994, case number 92–30773 was dismissed due to debtor's failure to make payments. Subsequent to the dismissal, National Mortgage notified debtor that the property would be foreclosed upon, and that a foreclosure sale was scheduled for May 17, 1994, at 12:00 noon.

At 8:59 a.m. on May 17, 1994, debtor, through her attorney Gerald Green, filed another Chapter 13 wage earner plan, case number 94–24784. Although Mr. Green alleges that he instructed someone from his office to inform counsel for National Mortgage of the filing, there is no evidence in the record that such communication actually occurred. To the contrary, it appears that National Mortgage did not receive notice of the new filing prior to the foreclosure sale. Accordingly, at noon on May 17, 1994, the foreclosure sale was held as scheduled. National Mortgage, as the servicer of the loan, was the highest bidder at the foreclosure sale. Subsequent to the sale, National Mortgage issued a forcible entry and detainer warrant in state court and obtained a writ of possession on June 8, 1994.

On May 19, 1994, debtor, through her attorney Gerald Green, filed a Motion to Set Aside the Foreclosure Sale Made in Violation of the Automatic Stay. A hearing on this motion was originally set for June 14, 1994,[2] but was continued to August 23, 1994.[3] On

---

1. National Mortgage Company is now known as Boatman's National Mortgage, Inc., but will be referred to throughout this order as "National Mortgage" to avoid confusion.

2. Neither debtor and her attorney, nor counsel for National Mortgage, appeared on June 14, 1994. As discussed *infra*, in footnote 3, National Mortgage maintains that it did not receive notice of this hearing.

3. National Mortgage maintains that it did not receive notice that the debtor had refiled bankruptcy until June 22, 1994, when the Sheriff's Department attempted to evict debtor pursuant to the foreclosure sale. National Mortgage further maintains that it did not receive notice that the motion to set aside the foreclosure sale had been filed, or that the motion was set for a hearing on June 14, 1994. After learning from the Sheriff's Department about debtor's new petition, National Mortgage also learned of the motion to set aside the foreclosure sale. National Mortgage then contacted debtor's counsel, and

July 26, 1994, counsel for National Mortgage, Alex Saharovich, sent a letter to Mr. Green confirming that the hearing on debtor's motion to set aside the foreclosure sale was set for 10:00 a.m. on August 23, 1994. Record on Appeal, No. 7, Ex. A.

Prior to the hearing, National Mortgage attempted to take debtor's deposition on two separate occasions. Debtor's deposition was originally scheduled for 2:00 p.m. on July 29, 1994. National Mortage issued a subpoena scheduling the deposition and requested that Ms. Brengettcy provide her 1992 and 1993 income tax returns, and all wage information for 1994. Neither Ms. Brengettcy nor Mr. Green appeared at the scheduled deposition. By letter of August 11, 1994, Ms. Brengettcy's deposition was rescheduled for 2:00 p.m. on August 16, 1994. Again, neither Ms. Brengettcy nor Mr. Green appeared. On August 18, 1994, National Mortgage filed a Motion to Compel Attendance at Deposition and to Dismiss Motion to Set Aside Foreclosure Sale. Record on Appeal, No. 4.

At 10:00 a.m. on August 23, 1994, counsel for National Mortgage, along with Kim Todd, a representative from the bankruptcy section of National Mortgage, appeared for the scheduled hearing on debtor's motion to set aside the foreclosure sale. Debtor and her attorney, Gerald Green, did not appear. After waiting until 11:25 a.m., counsel for National Mortgage was informed that debtor's motion was dismissed for failure to prosecute, and that counsel for National Mortgage was to draft a proposed order to be entered on August 25, 1994.

On August 23, 1994, counsel for National Mortgage faxed a copy of the proposed order to debtor's attorney Mr. Green, accompanied by a cover letter explaining that the order was to be entered two days later, on August 25. Record on Appeal, No. 7, Ex. B. Counsel for National Mortgage, Mr. Saharovich, maintains that Mr. Green then contacted him and "agreed that the order should be entered and indicated that he had no opposition to the order." Appellant National Mortgage's Br. at 7. Mr. Saharovich further alleges that

Mr. Green then requested that debtor be given additional time to vacate the premises.

After receiving the facsimile containing the proposed order dismissing debtor's motion and validating the foreclosure sale, Mr. Green did not file anything with the court objecting to the entry of the order on either August 23, August 24, August 25, or anytime thereafter. On August 25, Mr. Saharovich sent a letter to Mr. Green stating:

I [Mr. Saharovich] checked with my client concerning your request to allow Ms. Brengettcy additional time to vacate the premises. My client has indicated that in light of HUD regulations, National Mortgage Company must have possession of the premises immediately. Thus, it is my understanding that the writ of possession will be executed upon [Ms. Brengettcy] in the near future.

Record on Appeal, No. 7, Ex. C.

On August 25, 1994, the bankruptcy court entered an Order Denying Motion to Set Aside Foreclosure and Validating Foreclosure Sale, which stated:

Upon statement of counsel for the Creditor, and after reviewing the entire file, and after waiting until 11:25 a.m., the Court is of the opinion that Debtor's Motion to Set Aside Foreclosure is to be denied for failure to prosecute. The Court is of the opinion that Debtor and Debtor's attorney, Gerald Green, did not appear in Court to pursue this matter, and that Debtor's Motion is to be dismissed. Further, the Court is of the opinion that the Foreclosure sale which took place on May 27[sic][4], 1994, is to be validated, and that National Mortgage Company may immediately evict the Debtor. The Debtor is prohibited from taking any action to prevent National Mortgage Company from obtaining the premises municipally located at 1874 Meadowhill Street, Memphis, Shelby County, Tennessee.

Record on Appeal, No. 5. On September 6, 1994, the bankruptcy court entered an order deleting National Mortgage from debtor's Chapter 13 plan. Record on Appeal, No. 6.

---

agreed to set the motion for a hearing on August 23, 1994.

**4.** The actual date of the foreclosure sale was May 17, 1994.

Relying on the bankruptcy court's August 25, 1994 order validating the foreclosure sale, National Mortgage conveyed the property to Ray–Lee Investment Company ("Ray–Lee") on September 16, 1994. On October 19, 1994, debtor, through her new attorney W. Otis Higgs, Jr., filed a motion to set aside the foreclosure sale, and requested an injunction to prevent Ray–Lee from selling the property at issue or attempting to evict debtor. Record on Appeal, No. 8.

On October 21, 1994, the bankruptcy court held a hearing on debtor's motion at which debtor testified that Mr. Green never gave her notice of the hearing on August 23, 1994, nor did he tell her about the entry of the order on August 25, 1994. The transcript of that hearing reflects the following:

> Q: ...Now about the August 23rd date, is it your testimony that Mr. Green never told you about August 23rd?
>
> A: No, he never told me about August 23rd, and my understanding is that he was not here. I did not know that anything was set up after that. I thought the attorneys had, as he indicated to me, had worked everything out.

Record on Appeal, No. 14 at 4. Debtor testified that she learned from a friend about the hearing, and that she subsequently tried to contact Mr. Green on numerous occasions, but was not been able to reach him.

> Q: ...Ms. Brengettcy, did you then attempt to find out from Mr. Green about the hearing once you found out that a hearing had been held?
>
> A: Yes, I called him numerous times. I have not been able to talk to Mr. Green. I have been to his office and he has not been there. I have left numerous calls for him to call me, and after I could not talk with him, this is when other counsel was contacted.

*Id.* at 5–6.

On October 25, 1994, the bankruptcy court entered an order granting a temporary in-

junction as to all parties and setting the matter for a hearing on November 4, 1994, to determine if the court had jurisdiction over the motion. Record on Appeal, No. 9. Subsequent to the hearing, the bankruptcy court concluded that it had jurisdiction to address the issues, pursuant to 28 U.S.C. § 157(b)(2) and 28 U.S.C. § 1334, and set the matter for an additional hearing on December 13, 1994. Record on Appeal, No. 13.

On January 6, 1995, Judge Donald issued a Memorandum Opinion and Order vacating the August 25, 1994 order validating the foreclosure sale, and enjoining National Mortgage and Ray–Lee from taking any steps to evict Ms. Brengettcy. Record on Appeal, No. 13. National Mortgage then filed a Motion for Interlocutory Appeal with this Court. Record on Appeal, No. 15. Chief Judge Julia Gibbons denied National Mortgage's motion as premature, with instructions to the bankruptcy court to conduct additional hearings to determine whether debtor could show a change in circumstances.[5] Record on Appeal, No. 16.

On January 25, 1996, an additional hearing was held before Judge William Houston Brown [6] as to the issue of whether debtor had demonstrated a change in circumstances from the time that case number 92–30773 was dismissed on January 25, 1994, and the time that case number 94–24874 was filed on May 17, 1994. On January 31, 1996, Judge Brown entered an order finding that debtor had established sufficient changes in circumstances to justify the filing of case number 94–24874, and that the petition was filed in good faith with a proposal of a feasible reorganization plan. Record on Appeal, No. 18. Pursuant to Judge Brown's opinion, National Mortgage was ordered to reinstate the mortgage with Ms. Brengettcy. *Id.* at 8. On February 9, 1996, National Mortgage filed a Notice of Appeal.

---

5. As will be discussed below, Judge Donald's opinion emphasized the fact that debtor had been deprived of the opportunity to show a change in circumstances as required by the language of the "drop dead" clause in the court's December 21, 1992 order, and thus the foreclosure sale was held in violation of the automatic

stay that came into play upon debtor's filing of her petition on May 17, 1994 at 8:59 a.m., three hours prior to the foreclosure sale.

6. At this point in time, Judge Donald had been appointed to the District Court.

### STANDARD OF REVIEW

This Court reviews a judgment of the bankruptcy court pursuant to the standard set forth in Bankruptcy Rule 8013. Under Rule 8013, the bankruptcy court's findings of fact shall not be set aside unless those findings are "clearly erroneous." "A finding [of fact] is 'clearly erroneous' when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (citation omitted). Questions of law, however, are reviewed *de novo. In re Carled, Inc.,* 91 F.3d 811, 813 (6th Cir.1996).

### DISCUSSION

National Mortgage presents the following issues for appeal: 1) whether the August 25, 1994 order validating the foreclosure sale was a consent order that terminated debtor's rights to redeem the property; and 2) whether the bankruptcy court erred in granting relief under Fed.R.Civ.P. 60(b) and vacating the August 25, 1994 order validating the foreclosure sale.

A. *Was the Bankruptcy Court's August 25, 1994 Order Validating the Foreclosure Sale a Consent Order that Terminated Debtor's Rights to Redeem the Property?*

█ In its January 6, 1995 order vacating the order validating the foreclosure sale, the bankruptcy court construed its August 25, 1994 order as a default judgment. National Mortgage takes issue with this construction, and argues instead that the bankruptcy court's August 25, 1994 order validating the foreclosure sale should be construed as a consent judgment. In support of this argument, National Mortgage states that its counsel, Mr. Saharovich, sent a copy of the proposed order validating the foreclosure sale to debtor's attorney Mr. Green on August 23, 1994 via facsimile, accompanied by a cover letter informing him that the order would be entered on August 25, 1994. Mr. Saharovich maintains that Mr. Green then contacted him and stated that he had no objection to the entry of the order, but requested that his client be given additional

time to vacate the premises. Moreover, Mr. Green was then in possession of the proposed order for two days prior to its entry on August 25, 1994, and during that time did absolutely nothing to prevent it from being entered.

The Court notes that there is nothing in the record to dispute Mr. Saharovich's contentions. The presence in the record of copies of the letter attached to the proposed order sent by Mr. Saharovich to Mr. Green on August 23, 1994, as well as Mr. Saharovich's follow-up letter on August 25, 1994 responding to Mr. Green's request for additional time for his client to vacate the property, support Mr. Saharovich's statements. Record on Appeal, No. 7, Exs. A–B. Moreover, the fact that Mr. Green had received a copy of the order that was to be entered two days later on August 25, 1994, and did nothing to object to its entry, further strengthens National Mortgage's argument.

Two important factors mitigate against construing the order validating the foreclosure sale as a consent judgment, however. The first, and most important, is the language of the order itself. There is no ambiguity in the language of the bankruptcy court's order which states: "...Debtor's Motion to Set Aside Foreclosure is to be *denied for failure to prosecute.* The Court is of the opinion that Debtor and Debtor's attorney, Gerald Green, *did not appear in Court to pursue this matter, and their motion is to be dismissed."* Record on Appeal, No. 5 (emphasis added).

The bankruptcy court makes no mention of consent to entry of the order by both of the parties. The decision to dismiss debtor's motion for failure to prosecute was made prior to Mr. Saharovich's alleged conversation with Mr. Green. Mr. Saharovich was instructed by the bankruptcy court to draft a proposed order in accordance with the court's finding that debtor and her attorney did not appear, and that their motion was to be denied for failure to prosecute. The fact that, subsequent to the hearing, Mr. Green allegedly told Mr. Saharovich that he did not object to the entry of the order cannot transform the clear language of the order, as signed by the bankruptcy court, into a con-

sent judgment. Moreover, the fact that the order was signed by Mr. Saharovich and the Trustee, but not by Mr. Green, further undermines the argument that the bankruptcy court's order should be construed as a consent judgment.

Accordingly, while this is not an absolutely clear-cut situation, the Court agrees with the bankruptcy court that the August 25, 1994 order is more properly construed as a default judgment than as a consent order.[7]

**B. Did the Bankruptcy Court Err in Setting Aside the Order Validating the Foreclosure Sale Pursuant to Rule 60(b)?**

National Mortgage raises a number of arguments in support of its contention that the bankruptcy court erred in vacating its order validating the foreclosure sale. Each of these arguments will be addressed below.

**1. Jurisdiction of the bankruptcy court to reconsider its prior order**

As a threshold issue, National Mortgage argues that the bankruptcy court ·did not have jurisdiction to reconsider its order validating the foreclosure sale. In support of that argument, National Mortgage cites *In re Glenn*, 760 F.2d 1428 (6th Cir.1985). In *Glenn*, the Sixth Circuit held that a debtor can cure a mortgage default and reinstate the mortgage after a judgment of foreclosure is issued, but *before* a foreclosure sale takes place. *Id.* at 1435–36.

Under 11 U.S.C. § 1322(b)(5), a Chapter 13 debtor may provide for the curing of a mortgage default in his or her plan. As the bankruptcy court noted, pursuant to the Sixth Circuit's holding in *Glenn*, a debtor who files for relief under Chapter 13 after a foreclosure sale has occurred cannot cure a mortgage default under § 1322(b)(5). Con-

versely, a debtor who files a Chapter 13 petition prior to the foreclosure sale can reinstate the mortgage and provide for the curing of the default. As noted above, in the instant case, debtor filed for relief under Chapter 13 three hours prior to the foreclosure sale on May 17, 1994.

National Mortgage argues, however, that when the bankruptcy court entered the order validating the foreclosure sale, the rule of *Glenn* took effect, and debtor lost all rights to redeem the property. The bankruptcy court disagreed, and held that it did maintain jurisdiction by virtue of its power to vacate previous orders pursuant to Fed.R.Civ.P. 60(b) ("Rule 60(b)"). In support of this conclusion, the bankruptcy court noted that, under *Glenn*, a foreclosure sale eliminates a debtor's right to reinstate a mortgage through a *subsequently filed* Chapter 13 proceeding. In the instant case, the foreclosure sale occurred after debtor had filed her Chapter 13 petition. As the bankruptcy court correctly noted, the August 25, 1994 order stated that the foreclosure sale was validated, but did not backdate the foreclosure sale to a time before debtor's Chapter 13 petition was filed.

Moreover, Rule 60(b), made applicable to bankruptcy proceedings through Bankruptcy Rule 9024, grants the bankruptcy court the power to relieve a party from any final judgment or order. This Court agrees with the following analysis by the bankruptcy court:

> F.R.B.P. states that "Rule 60 Fed.R.Civ.P. applies in cases under the Code." It then states three narrow exceptions dealing with certain time limits.[8] It does not list orders validating foreclosure sales among the exceptions to the operation of Rule 60 in bankruptcy proceedings. Further the Advisory Committee Note to F.R.B.P. 9024 states that "[f]or the purpose of this

---

7. In so finding, the Court does not intend to minimize the significance of Mr. Green's failure to object to the entry of the order validating the foreclosure sale. As will be discussed below, the Court views Mr. Green's inaction upon receiving a copy of the judgment as a critical factor in the outcome of this case.

8. The exceptions are: (1) a motion to reopen a case under the Code or for reconsideration of an order allowing or disallowing a claim against the

estate entered without a contest is not subject to the one year limitation prescribed in Rule 60(b); (2) a complaint to revoke a discharge in a chapter 7 liquidation case may be filed only within the time allowed by § 727(e) of the Code; and (3) a complaint to revoke an order confirming a plan may be filed only within the time allowed by § 1144, § 1230, or § 1330. Fed.R.Bankr.P. 9024.

rule *all* orders of the bankruptcy court are subject to Rule 60(b)" (citation omitted) (emphasis in original). To accept National Mortgage's argument that the Court lacks jurisdiction in this matter, the Court would have to read the Sixth Circuit's holding in *In re Glenn* as creating a judicial exception to Rule 60(b) and F.R.B.P. 9024 where the order from which relief is sought validates a foreclosure sale. The Court does not find that *Glenn,* either explicitly or implicitly, creates such an exception.

Record on Appeal, No. 13 at 9–10. Accordingly, because the foreclosure sale occurred after debtor filed her Chapter 13 petition, and because the bankruptcy court has the power to relieve a party from all final orders under Rule 60(b), this Court affirms the bankruptcy court's jurisdiction to reconsider its order validating the foreclosure sale.

### 2. *Vacation of the default judgment*

 As discussed above, this Court agrees with the bankruptcy court that the August 25, 1994 order validating the foreclosure sale is properly construed as a default judgment. Accordingly, the determination as to whether the bankruptcy court's decision to vacate that default judgment was proper is a question of law that must be reviewed by this Court *de novo. See In re Carled, Inc.,* 91 F.3d 811, 813 (6th Cir.1996).

Federal Rule of Civil Procedure 55(c) provides:

> (c) Setting Aside Default. For good cause shown the court may set aside an entry of default, and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

The bankruptcy court's order validating the foreclosure sale was analogous to a default judgment, and should thus be evaluated under Rule 60(b), rather than under the more lenient "for good cause shown" standard applied to the entry of default. *See Waifersong, Ltd., Inc. v. Classic Music Vending,* 976 F.2d 290, 292 (6th Cir.1992). The reason for the application of a stricter standard to default judgments is that, once a judgment has been entered, "the district court's discretion to vacate the judgment is circumscribed by public policy favoring finality of judgments and termination of litigation." *Id.*

The factors to be considered by a court in determining whether to set aside a default judgment are well established. *United Coin Meter Co., Inc. v. Seaboard Coastline R.R.,* 705 F.2d 839, 845 (6th Cir.1983). Accordingly, in evaluating the bankruptcy court's order vacating its prior order validating the foreclosure sale *de novo,* this Court must consider:

> 1) Whether culpable conduct of the debtor led to the default;
>
> 2) Whether the debtor has a meritorious defense; and
>
> 3) Whether National Mortgage will be prejudiced if the default judgment is vacated.

*See id.*

Although it may appear that these three factors are to be equally balanced, the Sixth Circuit has stated that "the methodology for considering these factors and the weight to be accorded to them depends on whether the court is confronted by an entry of default or a default judgment." *Waifersong,* 976 F.2d at 292. When, as here, it is a default judgment that the debtor is seeking to avoid, "the specific requirements of Rule 60(b) narrow the scope of the court's equitable inquiry." *Id.*

The bankruptcy court evaluated debtor's motion to reconsider under Rule 60(b)(1), which provides as follows:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect . . .

Fed.R.Civ.P. 60(b). When evaluating a default judgment under Rule 60(b)(1), the question of whether the culpable conduct of the debtor contributed to the default is framed in terms of "mistake, inadvertence, surprise, or excusable neglect." *Waifersong,* 976 F.2d at 292. Moreover, while it may be that balancing of the three factors is appropriate in determining whether to set aside entry of a default, in the case of a default judgment,

[B]alancing is demonstrably inappropriate when a court initially proceeds, as in the instant case, under Rule 60(b)(1). That is because the rule mandates that a [debtor] cannot be relieved of a default judgment unless [s]he can demonstrate that [her] default was the product of mistake, inadvertence, surprise, or excusable neglect. It is only when the [debtor] can carry this burden that [s]he will be permitted to demonstrate that [s]he can also demonstrate the other two factors: the existence of a meritorious defense and the absence of substantial prejudice to the [appellant] should relief be granted.

*Id.*

Accordingly, in order to proceed with an evaluation of the second and third *United Coin Meter* factors for vacating a default judgment, the Court must first determine that the entry of the default judgment validating the foreclosure sale was the result of "mistake, inadvertence, surprise, or excusable neglect."[9] The first three possibilities clearly provide no basis for relief. First, no mistake was made. The bankruptcy court waited one and a half hours for debtor and her attorney to appear, and then made a reasoned decision to dismiss the motion for failure to prosecute. *See Fuller v. Quire,* 916 F.2d 358, 360 (6th Cir.1990). Therefore, the bankruptcy court's decision to dismiss the motion was the considered action of the court, and not a result of the second possibility, inadvertence. *See id.* Finally as the Sixth Circuit has noted, "there should be no surprise when the case is dismissed if [the debtor] does not show up...or perform as directed by the court." *Id.* Accordingly, as the bankruptcy court concluded, in order to vacate the order validating the foreclosure sale under Rule 60(b)(1), the Court must find that the entry of the default judgment was the result of excusable neglect. Record on Appeal, No. 13 at 13.

The bankruptcy court found that the entry of the default judgment validating the foreclosure sale was the result of excusable neglect. The bankruptcy court cited two Sixth Circuit decisions, *Carter v. City of Memphis,* 636 F.2d 159 (6th Cir.1980) and *Patterson v. Township of Grand Blanc,* 760 F.2d 686 (6th Cir.1985), in support of the proposition that "a default judgment should not be used as a method of disciplining an errant attorney."

9. The bankruptcy court noted, in a footnote without discussion, that the court "could also consider whether the order should be vacated for 'any other reason justifying relief' under Rule 60(b)(6)." Record on Appeal, No. 13 at 13. The bankruptcy court did not, however, make a determination as to whether relief under Rule 60(b)(6) would be appropriate in this case. Rule 60(b)(6) is generally invoked "only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule." *Hopper v. Euclid Manor Nursing Home, Inc.,* 867 F.2d 291, 294 (6th Cir.1989); *see also Pioneer Inv. Servs., Co. v. Brunswick Assocs. Ltd. Partnership,* 507 U.S. 380, 393, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (noting that the provisions of Rule 60(b)(1) and Rule 60(b)(6) are "mutually exclusive"). Accordingly, the Court finds that, because Rule 60(b)(1) is properly applied in evaluating whether the neglect that led to the default judgment was excusable, Rule 60(b)(6) is not available as a basis for relief under the narrow circumstances of this case.

In so holding, the Court is cognizant of the Sixth Circuit's decision in *Fuller v. Quire,* 916 F.2d 358 (6th Cir.1990), in which a district court was found to have not abused its discretion in granting a party relief from a default judgment entered against him based on gross misconduct by his lawyer pursuant to Rule 60(b)(6). This Court distinguishes *Fuller* from this case on two grounds. First, the Court in *Fuller* emphasized that there was no undue showing of prejudice to the defendant in that case as a result of the default judgment. 916 F.2d at 361. As will be discussed *infra,* the Court in the instant case finds that appellant has made a showing of prejudice based on its conveyance of the property at issue to Ray–Lee Investment, in reliance on the bankruptcy court's order validating the foreclosure sale. Second, the Sixth Circuit's decision in *Fuller* was announced prior to the Supreme Court's statement in *Pioneer* that the "Court of Appeals [for the Sixth Circuit] erred in not attributing to respondents the fault of their counsel." 507 U.S. at 397, 113 S.Ct. 1489. Accordingly, the Supreme Court's statement that "a party must show 'extraordinary circumstances' suggesting that the party is faultless," in order to obtain relief under Rule 60(b)(6), *Pioneer,* 507 U.S. at 393, 113 S.Ct. 1489, must be interpreted to mean that the conduct on the part of the party, *and* that party's counsel, is faultless. As the Court further noted, "if a party is partly to blame...relief must be sought...under subsection (1) and the party's neglect must be excusable." *Id.* Again, as the conduct of the party's attorney must be attributed to the party, then "the proper focus is on whether the neglect of [the debtor] and [her] counsel was excusable," pursuant to Rule 60(b)(1). *Id.* at 397, 113 S.Ct. 1489.

Record on Appeal, No. 13 at 14. The court then noted that the determination of whether a particular instance of neglect is excusable "is at bottom an equitable one, taking account all of the relevant circumstances surrounding the party's omission." *Id.* (quoting *Pioneer,* 507 U.S. at 395, 113 S.Ct. 1489).

The bankruptcy court repeated the Supreme Court's statement in *Pioneer,* that "'clients must be held accountable for the acts and omission of their attorneys,' unless the attorney's neglect is itself excusable." Record on Appeal, No. 13 at 14 (quoting *Pioneer,* 507 U.S. at 396–397, 113 S.Ct. 1489). However, after citing to this statement from *Pioneer,* and noting that it was a reaffirmance of the Supreme Court's earlier holding in *Link v. Wabash R.R. Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962), the bankruptcy court cited an unpublished Sixth Circuit decision, *Rush v. McLendon,* Nos. 92–6687, 93–5116, 1994 WL 88829 (6th Cir. March 17, 1994), in support of its conclusion that "dismissal is usually inappropriate where the neglect is solely the fault of the attorney." 1994 WL 88829, at *4. Accordingly, the bankruptcy court found that be-

cause the default was entered due to the misconduct of debtor's attorney, rather than her own misconduct, her conduct was not culpable.[10] The court stated that "it would be particularly harsh to penalize Ms. Brengettcy because the default order will result in the loss of property," and vacated the default judgment.[11]

This Court is well aware of the numerous Sixth Circuit opinions expressing reluctance to hold the client responsible for the misconduct of his or her attorney. *See, e.g., Carter v. City of Memphis,* 636 F.2d 159 (6th Cir. 1980). In *Carter,* however, the Sixth Circuit emphasized the lack of undue prejudice to the prevailing party upon vacation of the default judgment. *Carter,* 636 F.2d at 161 (noting that "[t]here is no finding or evidence that defendant was prejudiced by plaintiff's dereliction"). As discussed, *supra,* in footnote 11, this Court finds that the prejudice to National Mortgage as a result of vacating the default judgment distinguishes this case.

■ Moreover, in *Pioneer,* the Supreme Court explicitly stated that the Sixth Circuit[12] "erred in not attributing to respon-

10. The Court notes that, in finding debtor's conduct to be not culpable, the bankruptcy court necessarily found, although it did not explicitly so state, that the conduct of debtor's attorney constituted excusable neglect. Record on Appeal, No. 13 at 14.

11. The bankruptcy court also evaluated the other two prongs of the *United Coin Meter* test for setting aside a default judgment, and found that debtor could state a meritorious defense, and that the prejudice to National Mortgage was not significant enough to outweigh the damage to debtor. While the Court does not need to reach these other two prongs because, as will be discussed *infra,* the Court finds that debtor does not satisfy the first prong and thus cannot reach the other two, *Waifersong,* 976 F.2d at 292, the Court notes for the record that it agrees that debtor *does have a meritorious defense,* in that she was deprived of a hearing to determine whether she could show a change in circumstances.

The Court disagrees, however, with the bankruptcy court's conclusion that the prejudice to National Mortgage was not significant. In so finding, the Court notes that the bankruptcy court's statement in its January 6, 1995 order that "If a trial had been held on [August 23, 1994] and if Debtor had prevailed at such a trial, National Mortgage would have faced the same difficulties. Vacating the order and holding a

trial on the merits at this time would not increase the difficulties," is not accurate. Record on Appeal, No. 13 at 11. In the intervening time period between the entry of the order validating the foreclosure sale on August 25, 1994 and the bankruptcy court's vacation of that order on January 6, 1995, a significant event occurred: National Mortgage, relying on the finality of the bankruptcy court's order validating the foreclosure sale, conveyed the property to an innocent third party, Ray–Lee Investment, on September 16, 1994. Ray–Lee also relied on the finality of the bankruptcy court's order in agreeing to purchase the property at issue. If a hearing on the merits had been held on August 23, 1994, as scheduled, and debtor's motion had been granted, this sale would never have taken place. Because debtor's attorney did not appear at the hearing, however, and then did nothing to object to the entry of the order two days later, National Mortgage had every reason to believe that it could legally convey the property to Ray–Lee three weeks after the order validating the foreclosure sale was entered. The sale of the property to Ray–Lee during the period between the time that the judgment was entered, and then was later vacated, significantly increased the prejudice to National Mortgage.

12. As noted above, *Pioneer* was a bankruptcy appeal from the Sixth Circuit in which the Sixth Circuit declined to attribute fault for an attor-

694

dents the fault of their counsel." 507 U.S. at 397, 113 S.Ct. 1489. The Court stated:

> The [Sixth Circuit] suggested that it would be inappropriate to penalize respondents for the omission of their attorney, reasoning that "the ultimate responsibility...rested with [respondents'] counsel." The court also appeared to focus its analysis on whether respondents did all they reasonably could in policing the conduct of their attorney, rather than on whether their attorney, as respondents' agent, did all he reasonably could to comply with the court-ordered bar date. In this, the court erred.

> In other contexts, we have held that clients must be held accountable for the acts and omission of their attorneys. In *Link v. Wabash R.R. Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962), we held that a client may be made to suffer the consequence of dismissal of its lawsuit because of its attorney's failure to attend a scheduled pretrial conference. In so concluding, we found "no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client." *Id.* at 633, 82 S.Ct. 1386. To the contrary, the Court wrote:

> > "Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omission of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" *Id.* at 633–34, 82 S.Ct. 1386 (citation omitted).

> ...This principle applies with equal force here and requires that respondents be held accountable for the acts and omissions of their chosen counsel. Consequently, in determining whether respondents' failure...was excusable, the proper focus is on whether the neglect of respondents *and their counsel* was excusable.

*Pioneer,* 507 U.S. at 396–397, 113 S.Ct. 1489 (emphasis added). Accordingly, this Court concludes that the bankruptcy court erred in not attributing to debtor the misconduct of her attorney.

 The critical question before this Court, therefore, is whether the misconduct by debtor's attorney can be considered "excusable neglect," rendering debtor not culpable under the first prong of the *United Coin Meter* analysis for vacation of a default judgment, and as required by Rule 60(b)(1). As defined by the Supreme Court, excusable neglect encompasses misconduct caused by "inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Pioneer,* 507 U.S. at 388, 113 S.Ct. 1489. For purposes of Rule 60(b), excusable neglect is understood to encompass situations where the failure leading to the entry of the default is attributable to negligence. *See id.* at 394, 113 S.Ct. 1489. As the bankruptcy court noted, the determination of what constitutes "excusable neglect" [13] is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." 507 U.S. at 395, 113 S.Ct. 1489.

 Applying the standard set forth in *Pioneer* to the facts of the instant case, this Court finds that the misconduct by debtor's attorney that led to the entry of the order validating the foreclosure sale cannot be deemed excusable neglect. It is clear that debtor's attorney was aware that the hearing on his motion to set aside the foreclosure sale was set for August 23, 1994. Indeed, the record contains a copy of a letter from National Mortgage's counsel, sent to Mr. Green on July 26, 1994, reconfirming that the hear-

ney's misconduct to that attorney's client. *See Brunswick Assocs. Ltd. Partnership v. Pioneer Inv. Servs. Co.,* 943 F.2d 673, 677–78 (6th Cir.1991).

**13.** The Court notes that the Supreme Court's definition of "excusable neglect" in *Pioneer* was in the context of Bankruptcy Rule 9006(b)(1). However, the Supreme Court also discussed "excusable neglect" under Fed.R.Civ.P. 60(b)(1), *Pioneer,* 507 U.S. at 393, 113 S.Ct. 1489, and other courts have subsequently concluded that *Pioneer's* excusable neglect definition applies to Rule 60(b)(1). *See, e.g., Robb v. Norfolk & Western Ry. Co.,* 122 F.3d 354 (7th Cir.1997).

ing was to be held at 10:00 a.m. on August 23, 1994. Record on Appeal, No. 3, Ex. A.

There is no statement in the record from Mr. Green as to why he did not appear at the hearing. Debtor's second motion to set aside the foreclosure sale, filed by her second attorney, W. Otis Higgs Jr., states that Mr. Green was in Mississippi on that date on other business. Record on Appeal, No. 8. The Court realizes that it is possible that Mr. Green merely forgot that he was to appear in the bankruptcy court on August 23, 1994, and that his failure to show up could possibly be considered "inadvertent."

What the Court cannot excuse, however, is the fact that Mr. Green received the proposed order validating the foreclosure sale, via facsimile from Mr. Saharovich, two full days before the order was to be entered, and Mr. Green did absolutely nothing to object to the entry of that order. At this point, Mr. Green's conduct crossed the line from inadvertent to willful. It cannot be said that Mr. Green was unaware that his inaction would lead to the entry of a judgment against his client. It cannot be said that his decision to do nothing to attempt to prevent the entry of that order was a mistake, mere carelessness, or due to circumstances beyond his control. Indeed, Mr. Saharovich has repeatedly asserted that Mr. Green told him that he did not object to the entry of the order, and that evidence remains undisputed in the record.

Moreover, when considering the equities of an excusable neglect determination, a district court, so long as it does not treat the attorney's "overall record of compliance... as a dispositive factor,... may consider this record as one of the facts and circumstances that has a bearing on whether the negligence

of [the party's] attorney constitutes 'excusable neglect.'" *Robb*, 122 F.3d at 362. Mr. Green's repeated failure to appear at scheduled depositions and to produce subpoenaed records, his failure to appear at the August 23, 1994 hearing to argue his motion to vacate the foreclosure sale, and, finally, his failure to object to the order validating the foreclosure sale, give cumulative support to the conclusion that his conduct in this matter was inexcusable.

Pursuant to the Supreme Court's holdings in *Pioneer* and *Link*, debtor must be held accountable for the actions of her counsel. The Court recognizes that the Sixth Circuit has been extremely reluctant to deprive a client of her day in court merely because of the actions of her attorney, and realizes that reinstating the default judgment in this matter will work a harsh result upon the debtor. However, this is a case in which a weighing of the equities, "taking account of all relevant circumstances," mandates this result. *Pioneer*, 507 U.S. at 395, 113 S.Ct. 1489.

National Mortgage and Ray–Lee have proceeded in good faith throughout this proceeding. When National Mortgage initially held the foreclosure sale on May 17, 1994, it had no notice that debtor had filed her new Chapter 13 petition three hours earlier. As soon as National Mortgage learned of the petition, which did not occur until the Sheriff's Department attempted to evict debtor, National Mortgage contacted debtor's attorney to set a hearing date to argue debtor's motion to set aside the foreclosure sale.[14]

National Mortgage then attempted to take debtor's deposition on two separate occasions prior to that hearing. Debtor and her attorney did not appear on either date. National

---

14. As the bankruptcy court correctly found, it is clear that the foreclosure sale took place in violation of the automatic stay. Although National Mortgage did not have notice of debtor's new filing, notice is not necessary for the automatic stay to take effect. *See In re Holman*, 92 B.R. 764, 768 (Bankr.S.D.Ohio 1988) (stating that actions by creditors taken after filing of bankruptcy petition were in violation of the automatic stay, even though creditor had no notice of the bankruptcy filing). This Court agrees that the language of the "drop dead" clause provided debtor with the opportunity to be heard before her property was foreclosed upon. Where the Court differs with the bankruptcy court, however, is that this Court concludes that debtor was given such an opportunity to be heard: at the hearing scheduled for August 23, 1994. Debtor's attorney, however, failed to appear at that hearing, and, as a result, an order was entered validating the foreclosure sale. *See Easley v. Pettibone Michigan Corp.*, 990 F.2d 905, 910 (6th Cir.1993) (noting that 11 U.S.C. § 362(d) expressly permits the bankruptcy court to annul the automatic stay, thus retroactively validating actions taken by a creditor who was unaware of the existence of the automatic stay).

Mortgage appeared at the hearing on debtor's motion to set aside the foreclosure sale on August 23, 1994, ready to argue debtor's motion on the merits. Debtor and her attorney did not appear. After waiting one and one-half hours, the bankruptcy court instructed counsel for National Mortgage to draft a proposed order validating the foreclosure sale.

National Mortgage's counsel did so, and faxed a copy to debtor's attorney notifying him that the order was to be entered two days later on August 25, 1994. National Mortgage's counsel then spoke with debtor's counsel, and checked with his client regarding debtor's attorney's request that debtor be given additional time to vacate the premises. After no objection from debtor's counsel was received, the order validating the foreclosure sale was entered on August 25, 1994. Three weeks later, on September 16, 1994, National Mortgage conveyed the property to Ray–Lee Investments, in good faith reliance upon the bankruptcy court's order validating the foreclosure sale.[15]

The decision to hold debtor accountable for the actions of her attorney is further supported by the recognition of the question that this entire appeal boils down to: which of the parties in this case should be made to bear the consequences of debtor's attorney's misconduct? As set forth above, National Mortgage's conveyance of the property to Ray–Lee in good faith reliance upon the bankruptcy court's order validating the foreclosure sale means that it will prejudiced by potential liability to Ray–Lee if the order validating the foreclosure sale is vacated.

The Sixth Circuit has traditionally been loathe to "visit the sins of the attorney upon the client." *See, e.g., Buck v. United States Dep't of Agric.,* 960 F.2d 603, 608 (6th Cir. 1992). However, as stated by the Supreme Court, "[K]eeping this suit alive merely because [debtor] should not be penalized for the omissions of [her] own attorney would be visiting the sins of [debtor's] lawyer upon the [appellants]." *Link,* 370 U.S. at 634, n. 10, 82 S.Ct. 1386. Moreover, debtor has a potential remedy against her attorney in the form of a malpractice action. *Link,* 370 U.S. at 634, n. 10, 82 S.Ct. 1386. National Mortgage and Ray–Lee, however, have no remedy against debtor's counsel. Although this Court accepts the bankruptcy court's conclusion that debtor herself was unaware of the August 23, 1994 hearing and of the entry of the default judgment, this Court cannot in good conscience hold that National Mortgage and Ray–Lee should have to pay for the misconduct of the attorney that debtor freely selected. *Link,* 370 U.S. at 633–34, 82 S.Ct. 1386.

The Court has carefully considered all of the arguments and policy considerations involved in this case at great length. Although, as noted above, the end result is a harsh one for the debtor, the Court finds that equitable consideration of all of the relevant circumstances mandates this determination. As the Fifth Circuit stated in *Pryor v. United States Postal Serv.,* 769 F.2d 281 (5th Cir.1985),:

> Were this Court to make an exception to the finality of judgment each time a hardship was visited upon the client of a negligent or inadvertent attorney, even though the result be disproportionate to the deficiency, courts would be unable to ever

---

**15.** The Court notes that the second bankruptcy judge to preside over this matter, Judge Brown, stated that "National Mortgage proceeded with its postpetition foreclosure at great risk." Record on Appeal, No. 19 at 6. This Court disagrees. The record is devoid of evidence that National Mortgage had notice of debtor's May 17, 1994 petition. Accordingly, holding a foreclosure sale when the mortgage company does not know that another petition has been filed cannot be deemed "risky." It is true that debtor was entitled to a hearing to determine whether or not she could show a change in circumstances enabling her to file another bankruptcy petition after case number 92–30773 was dismissed.

However, pursuant to the language of the "drop dead" clause, debtor was not entitled to such a hearing unless, and until, she refiled. If she did not refile, National Mortgage was permitted to foreclose upon the house upon debtor's failure to make the regular monthly installment payments. Record on Appeal, No. 1 at 2. Debtor did fail to make her monthly payments, and National Mortgage subsequently filed a Notice of Intent to Foreclose and scheduled the foreclosure sale for May 17, 1994. When National Mortgage held the foreclosure sale, it had no notice that debtor had refiled, and thus had no notice that the sale was in violation of the automatic stay.

adequately redraw that line again, and meaningful finality of judgment would largely disappear....While we are sympathetic to the plight of the client prejudiced by his attorney's inadvertence or negligence, the proper recourse for the aggrieved client, as the Supreme Court noted in *Link,* is to seek malpractice damages from the attorney.

769 F.2d at 288–89.

As set forth above, the Court finds that the misconduct of debtor's attorney cannot be deemed excusable neglect. Debtor has failed, therefore, to qualify for relief, pursuant to Rule 60(b)(1), from the default judgment validating the foreclosure sale. Accordingly, the bankruptcy court's order vacating the August 25, 1994 order validating the foreclosure sale is REVERSED and the order validating the foreclosure sale is REINSTATED.

## CONCLUSION

For the foregoing reasons, the Court REVERSES the decision of the bankruptcy court and REINSTATES the August 25, 1994 order validating the foreclosure sale.