*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0193P (6th Cir.)
File Name: 02a0193p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

COAL OPERATORS AND
ASSOCIATES, INC.; PHELPS
COAL AND LAND CO.; and
ROY SEAGRAVES,
     *Plaintiffs-Appellants,*

v.

BRUCE BABBITT, in his
official capacity as Secretary
of the Interior,
     *Defendant-Appellee.*

No. 00-6320

Appeal from the United States District Court
for the Eastern District of Kentucky at Pikeville.
No. 00-00198—Joseph M. Hood, District Judge.

Argued: December 5, 2001

Decided and Filed: June 3, 2002

Before: NORRIS, SILER, and BATCHELDER, Circuit
Judges.

––––––––––––––––––

**COUNSEL**

**ARGUED:** M. Stephen Pitt, WYATT, TARRANT & COMBS, Louisville, Kentucky, for Appellants. David J. Lazerwitz, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** M. Stephen Pitt, Merrill S. Schell, WYATT, TARRANT & COMBS, Louisville, Kentucky, George L. Seay, Jr., Joseph J. Zaluski, WYATT, TARRANT & COMBS, Frankfort, Kentucky, James R. Cox, COX LAW FIRM, Louisville, Kentucky, for Appellants. David J. Lazerwitz, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

––––––––––––––––––

**OPINION**

––––––––––––––––––

ALAN E. NORRIS, Circuit Judge. Plaintiffs in this case filed a complaint for an accounting, declaratory relief, mandamus, and class action certification against the Secretary of the Interior ("Secretary") in an attempt to force the federal government to turn over approximately $1.3 billion dollars allegedly due to certain states under the Surface Mining Control and Reclamation Act of 1977 ("Act"), 30 U.S.C. § 1201 *et seq.* The district court granted the Secretary's motion to dismiss, finding that he had no duty to disburse the funds at issue without a prior Congressional appropriation. While we affirm the district court, we do so because plaintiffs failed to establish federal jurisdiction.

**I.**

According to the complaint, plaintiffs in this case include Coal Operators and Associates, Inc., a not-for-profit corporation whose members "are corporations and individuals who own land and minerals, and engage in auxiliary businesses related to coal production, sale, and distribution."

Plaintiff Phelps Coal and Land Company, Inc., is a Kentucky-based land and mineral owner that has paid into the Abandoned Mine Reclamation Fund ("Fund"), a trust fund administered by the Secretary under the terms of the Act, 30 U.S.C. § 1231. The complaint alleges that Phelps Coal owns land eligible for environmental remediation. Similarly, plaintiff Roy Seagraves, a Kentucky resident, owns property that has been adversely affected by coal mining operations and claims he is therefore in line for clean-up under the Act.

Since 1977 coal operators have been required by the Act to pay reclamation fees to the Fund. 30 U.S.C. § 1232. The Act provides that the money collected may be used, among other things, for "reclamation and restoration of land and water resources adversely affected by past coal mining." 30 U.S.C. § 1231(c)(1).

The Act also envisions active participation by states that have had land affected by the mining industry. They can, if they so choose, formulate a state program for reclamation and submit it for approval to the Secretary. 30 U.S.C. § 1235. The Act requires the Secretary to disburse 50% of the moneys collected by the Fund from coal operators within a state to that state as long as it meets certain statutory requirements, such as having an approved abandoned mine reclamation program. 30 U.S.C. § 1232(g). The Commonwealth of Kentucky has such a program. However, "[m]oneys from the fund shall be available for the purposes of this subchapter, only when appropriated therefor, and such appropriations shall be made without fiscal year limitations." 30 U.S.C. § 1231(d).

According to the complaint filed in this case, "there remains a balance of at least $1,351,564,993.63 of undistributed funds." For its part, "Kentucky has an inventory of high priority abandoned mine hazards in excess of $300,000,000.00. An additional (approximately) two hundred high priority landslides are added to the inventory annually as they are discovered or as emergencies arise." Moreover, "According to Defendant's own records, as of September 30,

1998, over Ninety-seven Million Dollars remained payable to Kentucky in the Non-Discretionary Funds portion of the Trust [i.e., Fund], despite the fact that 30 U.S.C. § 1232(g)(1)(A) requires that it be expended annually and that numerous projects in Kentucky are in need of funding."

Plaintiffs instituted this suit in an attempt to force the Secretary to comply with the explicit terms of the Act. In response, the Secretary filed a motion to dismiss. He argued, first, that the doctrine of sovereign immunity deprived the district court of jurisdiction; and, second, that he lacked authority to disburse money from the Fund without an appropriation for that purpose by Congress and, therefore, plaintiffs failed to state a claim upon which relief could be granted.

The district court granted the motion based upon failure to state a claim. After reviewing the provisions of the Act, the district court accepted the government's argument that Congress must first appropriate funds before the Secretary has a duty to distribute money from the Fund to the states:

> In this case, the language of the statute is facially clear, but a literal interpretation would lead to internal inconsistencies. Section 1231(d) clearly requires that money in the Fund must first be appropriated by Congress before it can be used for the designated purposes. Sections 1232(g) and 1235(h) seem to require that the Secretary must allocate 50 percent of reclamation fees back to the States without waiting for Congressional appropriations of money from the Fund. The Secretary cannot do both. For the following reasons, this Court determines that Congress must first appropriate money from the Fund to the Secretary and then the Secretary must allocate those moneys in accordance with the provisions of [the Act], which would include the requirements of sections 1232(g) and 1235(h).

Memorandum Opinion and Order at 6. In reaching its decision, the district court followed the general practice of according deference to governmental agencies charged with

### III.

The judgment of the district court is **affirmed**.

the duty owed by the Secretary in this case is to the Commonwealth of Kentucky, not to the plaintiffs.[2] Because plaintiffs cannot "rest [their] claim to relief on the legal rights or interests of third parties" but rather "must assert [their] own legal rights and interests," *Warth v. Seldin*, 422 U.S. 490, 499 (1975), they have failed to establish their standing to assert federal jurisdiction. This is so even though the court's judgment may benefit them collaterally. *Id.* Our conclusion is buttressed by the structure of the Act itself. Section 1270 of the Act specifically provides a remedy to individuals who seek to enforce compliance with its provisions as long as the prospective plaintiff gives the Secretary sixty-days' notice prior to filing suit. 30 U.S.C. § 1270(b). In this case, plaintiffs failed to comply with this notice provision and, since such notice provisions delimit the extent to which the sovereign has waived immunity, they cannot rely upon this section as a means of obtaining jurisdiction.[3] *See generally Board of Trs. of Painesville Township v. City of Painesville*, 200 F.3d 396, 400 (6th Cir. 2000).

In sum, plaintiffs have failed to show that the Secretary owes a clear duty to them, as opposed to the Commonwealth, which is prerequisite to mandamus relief, as reflected in the explicit language of 28 U.S.C. § 1361. Similarly, they have not asserted their own rights, but those of the Commonwealth, and therefore have failed to establish standing to sue under the general federal jurisdictional statute, 28 U.S.C. § 1331. Finally, they have failed to properly rely upon the one statutory provision, 30 U.S.C. § 1270, that might have afforded them a remedy.

---

[2] While the Commonwealth sought to intervene below, the district court dismissed the case before ruling on that matter.

[3] We note that the citizen suit provision of the Act envisions suits against the United States, Secretary, or any other governmental instrumentality only "to the extent permitted by the eleventh amendment to the Constitution." 30 U.S.C. § 1270(a). However, because plaintiffs failed to properly plead a § 1270 cause of action, we need not address the extent to which sovereign immunity applies to this case.

administering a statute. Here, "the Secretary's interpretation is not only reasonable, consistent and persuasive but also the most logical interpretation." *Id.* at 7. Finally, the court observed that "Congress has been well aware of the Secretary's interpretation of these provisions as Congress has appropriated money from the Fund each year since [the Act] was enacted in 1977." *Id.* at 8.

## II.

The Secretary contends that the district court lacked jurisdiction for two reasons: first, because plaintiffs did not have standing to sue; and, second, because the federal government has not waived sovereign immunity. The district court determined that jurisdiction was "proper under 28 U.S.C. § 1331 because this case arises under federal law" and also under 28 U.S.C. § 1361:

> While a district court may issue an order in the nature of mandamus under § 1361 only when the duty owed the plaintiff is clear, the district court may take jurisdiction to determine if a clear duty is owed to the plaintiff. *13th Regional Corp. v. United States Dep't of Interior*, 654 F.2d 756, 760 (D.C. Cir. 1980); *Einhorn v. DeWitt*, 618 F.2d 347, 349 (5th Cir. 1980). "For jurisdictional purposes it is not necessary that the duty be clear before the analysis begins; in other words, we take jurisdiction to determine whether there is a duty owed." *White v. Matthews*, 420 F.Supp. 882, 888 (D.S.D. 1976).

Memorandum Opinion and Order at 3-4. As the district court implicitly recognized, 28 U.S.C. § 1361 standing alone is insufficient to confer jurisdiction; only when an officer or employee of the United States owes a legal duty to the plaintiff does the district court "have original jurisdiction of any action in the nature of mandamus." 28 U.S.C. § 1361.

In the case before us, then, unless the Act creates a duty by the Secretary to plaintiffs, mandamus will not lie. In his motion to dismiss, the Secretary contended that the complaint failed to establish jurisdiction and also failed to state a claim;

therefore, dismissal was appropriate under either Fed. R. Civ. P. 12(b)(1) or 12(b)(6). As already discussed, the district court elected to dismiss based upon the failure to state a claim. In our view, it need not have reached this substantive question because plaintiffs failed to establish that they have standing to sue, which is a jurisdictional requirement.[1]

This court has recently explored the contours of the standing requirement in these terms:

Standing is "the threshold question in every federal case." *Warth,* 422 U.S. at 498, 95 S.Ct. 2197. The Supreme Court has stated that the standing requirement limits federal court jurisdiction to actual controversies so that the judicial process is not transformed into " 'a vehicle for the vindication of the value interests of concerned bystanders.' " *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 473, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (quoting *United States v. SCRAP,* 412 U.S. 669, 687, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973)). To satisfy Article III's standing requirement, a plaintiff must have suffered some actual or threatened injury due to the alleged illegal conduct of the defendant; the injury must be "fairly traceable" to the challenged action; and there must be a substantial likelihood that the relief requested will redress or prevent the plaintiff's injury. See *Valley Forge,* 454 U.S. at 472, 102 S.Ct. 752. Hence, the "irreducible minimum" constitutional requirements for standing are proof of injury in fact, causation, and redressability. See *id.* A plaintiff bears the burden of demonstrating standing and must plead its components with specificity. See *id.*

---

[1] We note that the Secretary did not raise the standing issue before the district court and instead based his jurisdictional argument solely on the doctrine of sovereign immunity. It is therefore hardly surprising that the district court did not address the question of standing.

In addition to the constitutional requirements, a plaintiff must also satisfy three prudential standing restrictions. First, a plaintiff must "assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth,* 422 U.S. at 499, 95 S.Ct. 2197 (citations omitted). Second, a plaintiff's claim must be more than a "generalized grievance" that is pervasively shared by a large class of citizens. See *Valley Forge,* 454 U.S. at 474-75, 102 S.Ct. 752. Third, in statutory cases, the plaintiff's claim must fall within the "zone of interests" regulated by the statute in question. See *id.* These additional restrictions enforce the principle that, "as a prudential matter, the plaintiff must be a proper proponent, and the action a proper vehicle, to vindicate the rights asserted." *Pestrak v. Ohio Elections Comm'n,* 926 F.2d 573, 576 (6th Cir. 1991).

*Coyne v. American Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999).

The Secretary takes the position that plaintiffs have failed to meet all of these requirements and offers three arguments. First, that plaintiffs cannot show that he caused them a direct injury. In his view, even if their health and general welfare have been harmed, the harm has been done by third-party mine operators. Second, that they cannot show that their claimed injuries will be redressed by a favorable decision. Simply because state governments receive additional moneys from the Fund, the mere possibility that some of that money will be used to remediate damaged sites on plaintiffs' property is insufficient to confer standing. Finally, the Secretary contends that plaintiffs cannot rest their claims on legal duties owed to others – in this case the Commonwealth of Kentucky – in order to assert standing. Here, their claimed entitlement to a writ of mandamus is premised on the Secretary's failure to allocate sufficient money from the Fund to the Commonwealth of Kentucky, not to plaintiffs.

While we are not persuaded by all of the arguments advanced by the Secretary, we agree with the proposition that