**In re BLI FARMS, partnership, Richard Jerry Bli, Charlotte Bli, James and Pearl Bli, Debtors,**

**Bli Farms, Appellant,**

v.

**Greenstone Farm Credit Services, FCLA, and its assignee USA Farm Service Agency, Appellee.**

No. 03–10134–BC.

United States District Court,
E.D. Michigan,
Northern Division.

July 26, 2004.

Daniel L. Kraft, Anderson, Stull, Lansing, MI, for Appellant.

Julia C. Pidgeon, U.S. Attorney's Office, Detroit, MI, for Appellee.

## CORRECTED OPINION AND ORDER AFFIRMING JUDGMENT OF BANKRUPTCY COURT

LAWSON, District Judge.

The consolidated debtors, James and Pearl Bli, Richard Jerry Bli, Charlotte Bli, and Bli Farms, a partnership, appeal from orders granting summary judgment in favor of GreenStone Farm Credit Services and the United States entered by the bankruptcy court in an adversary proceeding that the debtors commenced to forestall mortgage foreclosure proceedings. The appellants contend that a foreclosure sale on two parcels of property belonging to Charlotte Bli conducted by GreenStone violated the automatic stay that became effective when Charlotte filed an individual Chapter 11 proceeding. The sale took place shortly after Charlotte's bankruptcy petition was dismissed erroneously, and the adversary proceeding was commenced to invalidate the sale. The Farm Service Agency, under the authority of the Department of Agriculture, took an assignment of the sheriff's deed conveying the two parcels of property prior to the commencement of the adversary proceedings. GreenStone, and later the United States, on behalf of its agency, moved for summary judgment, and the bankruptcy court held that GreenStone's September 27, 2001 foreclosure sale was valid under Michigan law, the automatic stay was not in effect at the time of the foreclosure sale, and an order reinstating Charlotte's bankruptcy case did not revive the automatic stay retroactively so as to affect the validity of the foreclosure sale. The adversary proceeding accordingly was dismissed. This Court believes that the bankruptcy court's rulings were correct, and therefore the judgment of that court will be affirmed.

I.

Charlotte Bli is the matriarch of a mid-Michigan farming family that produces potatoes, sugar beets, corn and other crops on land located in Huron, Tuscola, Bay and Saginaw Counties. Charlotte is elderly and not directly involved in farming operations, which are carried out by her sons Richard and James, his wife Pearl, and their children. In recent years, the Blis have clashed with federal agencies over the validity of certain crop loss insurance claims and the authenticity of information furnished to support applications for disaster loans. The evidence in this case and others in this Court suggests that the farming business has not been a success for the Bli family over the past several years.

In 1993 and 1997, GreenStone loaned money to Charlotte, Richard, James and Pearl Bli and their family partnership, Bli Farms, for farming operations. The loans were evidenced by promissory notes and secured by real estate mortgages. Among the real estate subject to GreenStone's mortgages were two parcels of land, one in the northeast quarter of section 29, in Hampton Township, Bay County, Michigan (the Northeast parcel), and another in the southeast quarter of the southeast quarter of section 5, Portsmouth Township, Bay County, Michigan (the Portsmouth parcel).

Charlotte Bli held the title to both properties. The Farm Service Agency also has a mortgage on the Northeast parcel to secure a 1998 disaster loan.

After the Blis defaulted on their loans, GreenStone began foreclosure proceedings and eventually scheduled a sheriff's sale for January 19, 2001. The sale was postponed from week to week with appropriate notices given. However, on April 6, 2001, before a sale occurred, Charlotte ·filed a *pro se* petition in the bankruptcy court asserting that she was a small business as defined in 11 U.S.C. § 101(51C) and seeking expedited reorganization under Chapter 11 of the Bankruptcy Code. She was assigned case number 01–21069. James and Pearl Bli, husband and wife, filed a joint Chapter 11 petition on that same day. Richard Bli had already filed an individual Chapter 11 petition on March 30, 2001.

After Charlotte Bli's bankruptcy petition was filed, the bankruptcy court, the Honorable Arthur J. Spector presiding, entered an order on April 24, 2001 establishing reorganization plan filing deadlines. The court ordered Charlotte Bli to file a plan of reorganization by until July 15, 2001 and set September 13, 2001 as the deadline by which all plans in the case should be filed. The court also set a hearing date. The order contained a provision that anticipated the possibility that a plan might not be filed within the time allowed:

> **IT IS HEREBY ORDERED** ... [that a] hearing to allow the parties to show cause why the case should not be dismissed for failure to timely file a plan of reorganization shall be held on **September 21, 2001 at 3:00 p.m.** in the Bankruptcy Courtroom, 111 First Street, Bay City, Michigan, unless a plan had been timely filed. A hearing to allow the parties to show cause why the case should not be dismissed for the failure to obtain confirmation of the plan of reor-

ganization shall be held on **November 29, 2001 at 3:00 p.m.**

Gov't Br. Ex. 23.

On July 12, 2001, the bankruptcy court, pursuant to an unopposed motion by Ag Creditor Services, another creditor, entered an order directing that the assets and liabilities in Charlotte Bli's bankruptcy case be jointly administered and substantively consolidated with those of Richard, James, and Pearl Bli, with all pleadings to be filed under Richard Bli's case number, 01–20988. The order, entitled "Order Approving Joint Administration and Consolidation of Assets and Debts" stated the following:

> Upon the filing of a Motion for Joint Administration and Consolidation; and a copy of same having been served on the matrix, along with a Notice giving them the opportunity to object to same; and no objections having been filed; and the time in which to object having expired;
>
> IT IS ORDERED that the case of Richard Bli, File No. 01–20988; James and Pearl Bli, File No. 01–21070; and Charlotte Bli, File No. 01–21069, shall be jointly administered. All further proceedings shall be filed only in the case of Richard Bli, File No. 01–20988.
>
> IT IS FURTHER ORDERED that assets and debts of Richard Bli, File No. 01–20988; James and Pearl Bli, File No. 01–21070; and Charlotte Bli, File No. 01–21069, shall be substantively consolidated.

Gov't Br. Ex. 24. It appears that the cases were also later consolidated with the Bli Farms partnership bankruptcy case.

Charlotte Bli did not file a plan of reorganization on July 15, 2001 as ordered, and no plans were filed by September 13, 2001 as required by the bankruptcy court's April 24, 2001 order establishing reorganization plan deadlines. On September 14,

2001, the consolidated debtors, through counsel, filed a motion entitled "Motion Regarding Administration of Cases." In the motion, the debtors stated:

7. Prior to the entry of the order which consolidated the individual Bli cases, Charlotte Barbara Bli was not indebted to the creditors Bli Farms, except for the debts owed to the Farm Service Agency and to Greenstone Farm Credit Services. She has 2 small unsecured creditors who are not creditors of the partnership. Charlotte Barbara Bli has grandchildren from a prior marriage. Had the individual Bli's been represented by counsel, they would have objected to the consolidation of cases.

8. On August 31, 2001, counsel for Bli Farms was informed that the court has scheduled a deadline for filing a disclosure statement and plan in the Charlotte Bli case for September 13, 2001. Similar deadlines have been scheduled in the Richard Bli and James and Pearl Bli cases for October 12, 2001. The effect of the subsequent order for joint administration and consolidation of the three individual cases is unknown with respect to the different deadlines for filing the disclosure statement and plan. The Bli's [sic] believe it would be in the best interest of the estate to extend the deadline in the Charlotte Bli file to October 12, 2001.

Gov't Br. Ex. 8. The debtors asked the court to vacate the portion of the court's prior order regarding substantive consolidation and to "deconsolidate" *nunc pro tunc* the cases. The debtors also asked the court to extend the deadline to file the plan and disclosure statement in the Charlotte Bli case to October 21, 2001. The consolidated debtors attached a proposed order to the motion that would have deconsolidated the cases and extended the plan filing deadline. The order, however, was never entered by the court.

On September 21, 2001, the court entered an order dismissing Charlotte Bli's bankruptcy case for lack of progress. The court stated in the order that the deadlines to file a plan and a disclosure statement had "passed without action and, after due notice, no party in interest showed cause why the case ought not be dismissed." *Ibid.* A Notice of Dismissal stating that the automatic stay had been lifted was entered on September 25, 2001. On September 27, 2001, GreenStone held a foreclosure sale, successfully bid $160,000 on the Northeast parcel and $50,000 on the Portsmouth parcel, and obtained sheriff's deeds to the two pieces of property.

On September 28, 2001, Charlotte Bli filed a motion for reconsideration of the bankruptcy court's September 21, 2001 dismissal order. In her motion, Charlotte Bli stated that the dismissal of her case should be reconsidered in light of the consolidated debtors' September 14, 2001 motion regarding administration of cases that was filed.

On October 5, 2001, the court held a hearing on the motion for reconsideration. At the hearing, the question was raised whether the foreclosure sale was valid given that debtor Charlotte Bli had filed a motion asking the court to vacate the dismissal order. The bankruptcy court suggested to the parties that the foreclosure sale may have violated a bankruptcy rule that prohibits a party from foreclosing on property until ten days after the order of dismissal is entered to allow time for filing a motion for reconsideration of the dismissal order. Because the dismissal order was entered on September 21, 2001, and GreenStone foreclosed on September 27, 2001, the court informed the parties that it felt GreenStone's foreclosure likely was

improper. *See* Gov't Br. Ex. 31, Hearing Transcript at 16–18. The court seemed to think that the foreclosure sale ran afoul of a bankruptcy rule, the exact text or citation of which the court could not recall, that was similar to Federal Rule of Bankruptcy Procedure 4001(a)(3), which states that an order granting a motion for relief from an automatic stay is itself stayed until the expiration of ten days after the entry of the order. *Id.* at 18. The following colloquy then took place between the court and Mr. Hewitt, counsel for Green-Stone:

> Court: I'm going to grant the motion for reconsideration of the dismissal of the Charlotte Bli case for the reasons indicated in the motion and set aside the order of dismissal. Whether that in any way affects the rights of the creditor who has foreclosed will be decided when the issue is properly focused. I don't know what it means nunc pro tunc in this context. When I set aside the order of dismissal, that order is set aside. What the consequence of that is, I don't know. Just—just by itself a motion for reconsideration asks the Court to undo the order that was entered erroneously for one reason or another.
>
> I'm granting that motion, that order is undone. What's the consequence of that? I don't know. I'll let you argue that when the time comes. On the other hand, of course, by the time the redemption period would expire on that foreclosure sale—how—how much is the property—what was it bid for that [sic]?
>
> Mr. Hewitt: There were two parcels, Judge. We bid $160,000 on one and fifty on the other for a total obviously of 210,000. One year's redemption.
>
> Court: All right. You've got one year to come up with $210,000. Suppose

it's something that even if the foreclosure stands the debtor has a year through this plan to come up with the money from one way or another to redeem it from a foreclosure. Was the bank the buyer or was there an independent purchaser?

> Mr. Hewitt: No, the bank was the purchaser, Your Honor. We bid against their debt.
>
> Court: That keeps it uncomplicated then. So I'll let you—let you brief the consequence of the setting aside of the order of dismissal if it makes sense for you to do, because economically if it's going to be redeemed anyway who cares. So what else have we got? · We've got—
>
> Mr. Hewitt: Just so I understand, Your Honor, the—the issue of the sale is up for someone to raise.
>
> Court: I'm not deciding that.
>
> Mr. Hewitt: Okay. Just so I understand.
>
> Court: Right, right. I mean if somebody wants to come in an argue that the sale is valid, actually you wouldn't a sale is a sale. Someone would have to come in and say the sale was invalid and we'll deal with it then. You know, you'll have to give me some law on that.
>
> Maybe that issue won't arise because in the course of the plan there may be new money financing a lot of things and the first two ten of that would go to buy back that land from a foreclosure, who knows. I don't know what the plan is going to say.

*Id.* at 18–20.

On October 26, 2001, the court entered an order granting the motion for reconsideration, set aside the September 21, 2001 order of dismissal, and ordered that the Charlotte Bli bankruptcy case, case number 01–21069, continue. On that same

date, the court entered an administration order that called for the reinstated case of Charlotte Bli to be jointly administered and substantively consolidated with the other individual Bli cases and set the deadline for filing the disclosure statement and plan of reorganization in the consolidated cases for January 11, 2002.

Meanwhile, on September 13, 2002, GreenStone assigned its interest as grantee under the sheriff's deed on the mortgage sale for the Northeast parcel to the Farm Service Agency for consideration of $185,050.81. The Farm Service Agency apparently purchased the assignment to protect its second lien position. It recorded the assignment on September 17, 2002.

On September 25, 2002, two days before the expiration of the redemption period on the Northeast and Portsmouth parcels, Bli Farms filed an adversary proceeding complaint in the bankruptcy court seeking a declaratory ruling and other relief concerning the foreclosure sale held by Green-Stone on September 27, 2001. In the complaint, Bli Farms stated that it assumed that since a motion requesting an extension of the September 13, 2001 deadline to file a reorganization plan was filed by debtor Charlotte Bli, the September 21, 2001 show cause hearing should have been cancelled. The plaintiff also states that "[j]ustice and equity and the circumstances surrounding entry of the dismissal order require a finding that the automatic stay remained intact, or was reinstated nunc pro tunc, by entry of the October 26, 2001 order granting Charlotte Bli's motion for reconsideration of the dismissal order." Gov't Br. Ex. 1; Compl. ¶ 16. Therefore, the plaintiff requested in the complaint that the foreclosure sale be declared null and void (count 1), sought declaratory relief for GreenStone's failure to follow the appropriate statutory foreclosure proce-

dures (count 2), and sought damages for violation of the automatic stay (count 3).

With the complaint, the plaintiff also filed an ex parte request for immediate entry of a temporary restraining order and a motion for a preliminary injunction seeking to enjoin GreenStone from proceeding further with the foreclosure on the two parcels of property upon the expiration of the statutory redemption period. Although not named as a party, the United States, through the Farm Service Agency, filed a response to the motion, as did GreenStone, on September 27, 2002.

On September 27, 2002, the bankruptcy court, the Honorable Steven W. Rhodes presiding, granted a temporary restraining order and stayed the foreclosure on the two parcels of property. The court ordered that the stay would remain in effect until October 24, 2002, the date the court set for the preliminary injunction motion to be heard before Bankruptcy Judge George C. Paine, II.

On October 7, the plaintiff amended its complaint to name the United States as a defendant. On October 21, 2002, the United States filed a supplemental response to the motion for preliminary injunction. The following day, the parties submitted a stipulation of facts.

The bankruptcy court held a hearing on the preliminary injunction motion on October 24, 2002. On November 5, 2002, the court entered an order denying the motion for preliminary injunction. In the order, the court stated that the order reinstating Charlotte Bli's bankruptcy case did not retroactively impose the automatic stay *nunc pro tunc* from the date of dismissal on September 21, 2001. The court rejected the plaintiff's argument that because Charlotte Bli's case was substantively consolidated with other bankruptcy cases the automatic stay remained in place, finding that when a debtor is dismissed from a

consolidated case, the property owned by the debtor is removed from the case with the dismissal. Finally, the court found that Charlotte Bli and her attorney were provided with due notice of the deadline for filing the plan and the notice of the hearing on the order to show cause, and that despite this notice neither Charlotte Bli nor her attorney appeared at the hearing. Therefore, the court found that the plaintiff was unlikely to succeed on the merits of its complaint and denied the request for a preliminary injunction.

On November 18, 2002, the plaintiff filed a motion for rehearing on its motion for preliminary injunction. On December 3, 2002, the court entered an order denying the motion because the plaintiff had failed to show that the show cause hearing went forward as the result of clerical error justifying relief pursuant to Federal Rule of Bankruptcy Procedure 9024 and Federal Rule of Civil Procedure 60(a), and the plaintiff did not show that the court's denial of its motion for preliminary injunction was the product of mistake or inadvertence justifying relief under Rule 60(b).

While the plaintiff's motion for rehearing was pending, GreenStone filed a motion for summary judgment on November 22, 2002. On December 4, 2002, the United States filed a motion concurring with GreenStone's motion for summary judgment and the plaintiff responded. On December 12, 2002, the bankruptcy court held a hearing and entered an order granting the motion for summary judgment on January 16, 2003. The court did not make any written findings in this order, but instead referred to its earlier order denying the plaintiff's motion for preliminary injunction and stated that the grounds for granting GreenStone's motion for summary judgment were the same as its grounds for denying the preliminary in-

junction order as there were no material facts in dispute.

On January 27, 2003, the plaintiff filed a notice of appeal of the bankruptcy court's order granting GreenStone's motion for summary judgment. This Court dismissed the appeal for want of prosecution on April 7, 2003 because the parties did not submit briefs pursuant to the Court's scheduling order.

While the appeal with GreenStone was pending, the United States filed a motion for summary judgment in the bankruptcy court on February 27, 2003 because the bankruptcy court's order granting GreenStone's motion did not address the claims against the United States and, according to the government, did not result in a final judgment in favor of GreenStone. The government argued that as the assignee of GreenStone's interest as mortgagee under the sheriff's deed of mortgage sale, the United States stood in GreenStone's shoes with respect to all claims raised in the complaint and, because the bankruptcy court granted summary judgment for GreenStone, it is was also entitled to summary judgment. The plaintiffs filed an answer to the motion on March 14, 2003.

On May 21, 2003, the bankruptcy court, the Honorable Walter Shapero presiding, entered an order granting the government's motion for summary judgment. The court found that the United States, as assignee to GreenStone's interest in the Northeast parcel, "stands in the shoes of GreenStone with respect to Debtor's [Charlotte Bli] claims against it in this adversary proceeding" and that the grounds for the government's motion were "identical to the basis upon which Green-Stone's previous motion for summary judgment was granted." Gov't Br. Ex. 19.

On June 10, 2003, the plaintiff appealed the court's order granting the government's motion for summary judgment. On

June 12, 2003, the bankruptcy court dismissed the consolidated debtors' bankruptcy proceeding for failure to comply with an earlier court order. The defendants assert that as of December 20, 2001, the debt owed to GreenStone totaled $322,685.00, *see* Gov't Br. Ex. 8 at ¶ 19, and the balance due on the loan from the United States as of July 12, 2001 was $548,208.90. *See id.* at ¶ 5.

## II.

As an initial matter, the government challenges the Bli debtors' standing to prosecute this appeal. The government argues in its brief on appeal that Charlotte Bli, not plaintiff Bli Farms, is the proper party to bring this appeal because Bli Farms has no ownership interest in the foreclosed parcels; Charlotte Bli is the owner of the property. Thus, the government contends that Bli Farms lacks standing to bring this action. The government acknowledges in its brief that it is raising the standing issue for the first time on appeal.

Standing is "the threshold question in every federal case." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). "The Supreme Court has stated that the standing requirement limits federal court jurisdiction to actual controversies so that the judicial process is not transformed into 'a vehicle for the vindication of the value interests of concerned bystanders.' " *Coal Operators and Associates, Inc. v. Babbitt,* 291 F.3d 912, 915–16 (6th Cir.2002) (quoting *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 473, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)). "To satisfy Article III's standing requirement, a plaintiff must have suffered some actual or threatened injury due to the alleged illegal conduct of the defendant; the injury must be

'fairly traceable' to the challenged action; and there must be a substantial likelihood that the relief requested will redress or prevent the plaintiff's injury." *Coal Operators,* 291 F.3d at 916. Thus, the constitutional requirements for standing are proof of injury in fact, causation, and redressability. *Ibid.*

In addition to the constitutional requirements, a plaintiff must also satisfy three prudential standing restrictions. *See ibid.* First, a plaintiff must "assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth,* 422 U.S. at 499, 95 S.Ct. 2197 (citations omitted). Second, a plaintiff's claim must be more than a "generalized grievance" that is pervasively shared by a large class of citizens. *Coal Operators,* 291 F.3d at 916 (citing *Valley Forge,* 454 U.S. at 474–75, 102 S.Ct. 752). Third, in statutory cases, the plaintiff's claim must fall within the "zone of interests" regulated by the statute in question. *Ibid.* "These additional restrictions enforce the principle that, 'as a prudential matter, the plaintiff must be a proper proponent, and the action a proper vehicle, to vindicate the rights asserted.' " *Coal Operators,* 291 F.3d at 916 (quoting *Pestrak v. Ohio Elections Comm'n,* 926 F.2d 573, 576 (6th Cir.1991)).

"A plaintiff bears the burden of demonstrating standing and must plead its components with specificity." *Coal Operators,* 291 F.3d at 916.

In this case, the Court is satisfied that the plaintiffs have satisfied Article III's requirements for standing. The plaintiffs' loss of land is an actual injury that is "fairly traceable" to the challenged conduct of the defendants, and this Court has the authority to redress those alleged wrongs. This is an actual controversy. If the government's standing argument has

merit, it is because the plaintiffs did not plead the prudential components of standing with specificity in their complaint.

 However, the government has failed to show that exceptional circumstances warrant a departure from the general rule that a reviewing court will not consider issues raised for the first time on appeal. *See In re Cannon,* 277 F.3d 838, 848 (6th Cir.2002) (stating that generally a reviewing court will not consider issues raised for the first time on appeal); *Poss v. Morris,* 260 F.3d 654, 663 (6th Cir.2001); *Michigan Nat'l Bank v. Charfoos (In re Charfoos),* 979 F.2d 390, 395 (6th Cir.1992); *Pinney Dock & Transport Co. v. Penn Cent. Corp.,* 838 F.2d 1445, 1461 (6th Cir. 1988). Whether to consider an issue on which the lower court did not pass rests within the discretion of the reviewing court and depends upon the facts of the individual cases. *In re Cannon,* 277 F.3d at 848 (citing *Singleton v. Wulff,* 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976)). Factors guiding the determination of whether to consider an issue for the first time on appeal include:

> 1) whether the issue newly raised on appeal is a question of law, or whether it requires or necessitates a determination of facts; 2) whether the proper resolution of the new issue is clear and beyond doubt; 3) whether failure to take up the issue for the first time on appeal will result in a miscarriage of justice or a denial of substantial justice; and 4) the parties' right under our judicial system to have the issues in their suit considered by both a district judge and an appellate court.

*Cannon,* 277 F.3d at 848 (citing *Friendly Farms v. Reliance Ins. Co.,* 79 F.3d 541, 545 (6th Cir.1996)). The Sixth Circuit has held that exceptional circumstances may warrant a departure from the general rule.

*Poss,* 260 F.3d at 663–64; *Foster v. Barilow,* 6 F.3d 405, 407 (6th Cir.1993).

In this case, both the government and GreenStone had ample opportunity to raise this issue below and their failure to do so will not be grounds to dismiss this case now for lack of standing. Therefore, the Court will decline to address this issue on appeal and will render a decision on the merits of the case.

### III.

Although the appellants' brief is not particularly well organized, the Court believes that the plaintiffs raise four arguments: (1) whether the bankruptcy court's July 12, 2001 consolidation order nullified the bankruptcy court's then-existing scheduling order setting September 13, 2001 as a deadline for Charlotte Bli to file a proposed plan of reorganization or show cause why she had not eight days later; (2) whether the bankruptcy court's consolidation order "subsumed" Charlotte Bli's bankruptcy case and individual property into the consolidated debtors' estates so that order dismissing Charlotte Bli's bankruptcy petition and lifting the automatic stay did not affect and leave unprotected the two parcels of land sold at the foreclosure sale; (3) whether the bankruptcy court abused its discretion when it refused to set aside the foreclosure sale; and (4) whether the bankruptcy court provided Charlotte Bli with an adequate forum for her motion for preliminary injunction.

 In an adversary bankruptcy proceeding, "the bankruptcy court makes initial findings of fact and conclusions of law. If its decision is appealed to the district court, the district court is bound by the bankruptcy court's findings of fact unless they are clearly erroneous [and] ... reviews the bankruptcy court's legal conclusions *de novo.*" *In re Batie,* 995 F.2d 85,

88 (6th Cir.1993) (citing Fed. R. Bankr.P. 8013).

Rule 8013 provides:

On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

Fed. R. Bankr.P. 8013.

██ "The correct standard for appellate review of summary judgment orders in an adversarial bankruptcy proceeding is the same as that utilized by the bankruptcy court under [Federal Rule of Civil Procedure] 56(c) in initially determining whether summary judgment is appropriate." *In re Julien Co.,* 171 B.R. 307, 309 (W.D.Tenn.1992) (citing *Hand v. Central Transport, Inc.,* 779 F.2d 8 (6th Cir.1985)). "Therefore, the test to be applied by [the district court] is whether the 'pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party . . . raise a genuine issue of material fact for trial.'" *In re Julien,* 171 B.R. at 309 (quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987)). "[T]he bankruptcy court's decision to grant summary judgment is purely a question of law." *Ibid.* (citing *Martin v. Ohio Turnpike Comm'n,* 968 F.2d 606, 609 (6th Cir.1992)).

██ Whether a foreclosure should be set aside by the bankruptcy court is not an equitable determination subject to the abuse of discretion standard, *see In re M.J. Waterman & Associates, Inc.,* 227 F.3d 604, 607–08 (6th Cir.2000), but is a question of law that must be reviewed by

this Court *de novo. National Mortg. Co. v. Brengettcy,* 223 B.R. 684, 691 (W.D.Tenn.1998).

### A.

The plaintiffs argue that the bankruptcy court's July 12, 2001 order entitled "Order Approving Joint Administration and Consolidation of Assets and Debts," which stated that "[a]ll further pleadings shall be filed only in the case of Richard Bli, file no. 01–20988," became the law of the case in this action and effectively "closed" Charlotte Bli's individual bankruptcy case. The plaintiff further argues that as a result of the July 12, 2001 order, any order by the bankruptcy court involving Charlotte Bli's individual bankruptcy case should be rendered null and void because the only case pending was the Richard Bli case with the consolidated debtors. Because Charlotte Bli's individual bankruptcy case was closed and became part of the consolidated cases, the plaintiff argues that Charlotte Bli did not have a duty to submit an individual reorganization plan as ordered by the bankruptcy court's April 24, 2001 scheduling order, and was not required to attend the show cause hearing.

██ "[T]he law of the case doctrine merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." *Christianson v. Colt Industries Operating Corp.,* 486 U.S. 800, 817, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (quotation and citation omitted). "A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Ibid.* (quoting *Arizona v. California,* 460 U.S. 605, 618 n. 8, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983)).

■ "The purpose of this doctrine is twofold: (1) to prevent the continued litigation of settled issues; and (2) to assure compliance by inferior courts with the decisions of superior courts." *United States v. Todd,* 920 F.2d 399, 403 (6th Cir.1990) (citing 1B J. Moore, J. Lucas, & T. Currier, Moore's Federal Practice ¶ 0.404[1], at 118 (1988)).

■ The flexibility of this doctrine varies with the context of its application. *Todd,* 920 F.2d at 403. "Between coordinate courts, a court is not deprived of the power to revisit a previously decided issue, so long as the case remains within its jurisdiction. Yet, when a superior court determines the law of the case, an inferior court lacks the power to depart from it." *Ibid.* (quoting *Litman v. Massachusetts Mut. Life Ins. Co.,* 825 F.2d 1506 (11th Cir.1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 700, 98 L.Ed.2d 652, (1988)). The doctrine of the law of the case, therefore, does not foreclose a court from reconsidering issues in a case previously decided by the same court or another coordinate court.

■ In this case, the doctrine of the law of the case does not apply because there was no intervening appellate decision. The debtor is not entitled to relief because the court never amended its order requiring Charlotte Bli to file a plan on time, or to show cause why she failed to do so. The July 12, 2001 order consolidating the cases did not foreclose the bankruptcy court from enforcing its prior scheduling order.

It is true that the consolidation order may have caused confusion on when Charlotte's proposed plan was to have been filed. However, under the circumstances the proper course would have been to seek guidance from the bankruptcy court, not to ignore the established deadlines. When the court did not enter Charlotte's proposed order extending the deadline, the debtor should have received a strong signal that the scheduling order already in place ought to be followed in spite of the consolidation. The consolidation order merely joined the cases for the purpose of substantively administering the assets; it dismissed nothing. The Court finds no reversible error on the part of the bankruptcy court on this issue.

## B.

The plaintiffs next argue that the July 12, 2001 consolidation order created a consolidated bankruptcy estate that contained the property of the consolidated debtors; therefore, they reason, the property foreclosed by GreenStone on September 27, 2001 was not Charlotte Bli's individual property but was the property of the consolidated estate, and as such could not be foreclosed upon due to the automatic stay that was in place.

The bankruptcy court's consolidation order plainly combined the cases for both administrative and substantive purposes. A district court in the Eastern District of Virginia explained this concept as follows:

When spouses file a joint petition for bankruptcy, the separate estates are administratively consolidated for convenience and efficiency but they remain legally distinct for purposes of satisfying creditors' claims. Substantive consolidation, by contrast, creates a single estate from the two individual estates. The bankruptcy judge applies two basic tests to determine whether to substantively consolidate the estates. First, he examines whether the debtors' financial affairs were so intermingled that it would be difficult to disentangle them, or that it would be unfair to creditors to treat them as separate estates. Second, he looks for an equitable balance of preju-

dice to the creditors if the estates are consolidated. If he determines that substantive consolidation is warranted, the two estates become one estate for purposes of paying all creditors.

*Thomas v. Peyton,* 274 B.R. 450, 456 (E.D.Va.2001).

 A bankruptcy court, utilizing its equitable discretion, may substantively consolidate cases involving related debtors. *See* 11 U.S.C. § 105 (stating that the bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the bankruptcy code), and 11 U.S.C. § 302(b) (discussing consolidation); *see also* Fed. R. Bankr.P. 1015(b); *In re American HomePatient, Inc.,* 298 B.R. 152, 165 (Bankr.M.D.Tenn.2003). In *In re Stone & Webster, Inc.,* 286 B.R. 532 (Bankr.D.Del.2002), the bankruptcy court stated the following concerning the history of a bankruptcy court's power to order substantive consolidation:

> The remedy of substantive consolidation was recognized by the Supreme Court as early as 1941. *See Sampsell v. Imperial Paper & Color Corp.,* 313 U.S. 215, 61 S.Ct. 904, 85 L.Ed. 1293 (1941) (in upholding consolidation, noting that "power of the bankruptcy court to subordinate claims or to adjudicate equities arising out of the relationship between the several creditors is complete"). Moreover, its roots extend to at least as far back as the Bankruptcy Act of 1898, and nothing in the Bankruptcy Code or case law suggests that the remedy is not available today. *In re Bonham,* 229 F.3d 750, 765 (9th Cir.2000) ("[E]ven though substantive consolidation was not codified in the statutory overhaul of bankruptcy law in 1978, the equitable power undoubtedly survived enactment of the Bankruptcy Code. No case has held to the contrary.").

*Id.* at 538. *See also In re Augie/Restivo Baking Company Ltd.,* 860 F.2d 515 (2d Cir.1988) (stating that substantive consolidation has no express statutory basis but is a product of judicial gloss; courts have found the power to consolidate substantively in the court's general equitable powers as set forth in 11 U.S.C. § 105); *Eastgroup Properties v. Southern Motel Association, Ltd.,* 935 F.2d 245 (11th Cir. 1991) (same); *Meyer v. Hammes,* 187 B.R. 281, 284 (S.D.Ind.1995) ("A bankruptcy court's authority to order substantive consolidation, however, normally is based on its broad equitable power under 11 U.S.C. § 105(a)."). *See also Matter of New Center Hosp.,* 187 B.R. 560, 567 (E.D.Mich.1995) (holding that substantive consolidation of assets of a debtor and a non-debtor is available to the bankruptcy court under 11 U.S.C. § 105(a)).

 "Substantive consolidation in bankruptcy is a process by which the assets and liabilities of different entities are consolidated and treated as a single entity. The consolidated assets create a single fund from which all of the claims against the consolidated debtors are satisfied." *In re American HomePatient, Inc.,* 298 B.R. at 164; *In re AAPC, Inc.,* 277 B.R. 785, 789 (Bankr.D.Utah 2002) ("Substantive consolidation involves the pooling of assets and liabilities of two or more related entities; the liabilities of the entities are then satisfied from the common pool of assets created by the consolidation."); *In re Blair,* 226 B.R. 502, 505 (Bankr.D.Me. 1998) ("After substantive consolidation, 'the consolidated estates create a single fund from which all of the claims of the consolidated debtors are satisfied.'").

 "Substantive consolidation is employed in cases where the interrelationships of the debtors are hopelessly obscured and the time and expense necessary to attempt to unscramble them is so

substantial as to threaten the realization of any net assets for all of the creditors." *First Nat'l Bank of Barnesville v. Rafoth (In re Baker & Getty Fin. Servs.)*, 974 F.2d 712, 720 (6th Cir.1992) (quoting *Evans Temple Church of God in Christ & Community Ctr., Inc. v. Carnegie Body Co. (In re Evans Temple Church of God in Christ & Community Ctr., Inc.)*, 55 B.R. 976, 981 (Bankr.N.D.Ohio 1986)).

Implicit in this decision is the conclusion that the benefit—protection of the possible realization of any recovery for the majority of unsecured creditors—outweighs the potential harm to any particular creditor. Thus, when substantive consolidation is ordered, there is, in effect, a determination that the circumstances of the cases warrant consolidation and that the best interests of the unsecured creditors are served by joining the assets and liabilities of two or more debtors.

*In re American HomePatient, Inc.*, 298 B.R. at 165–66.

In making the determination of the balance of equities for and against substantive consolidation, many bankruptcy courts employ a seven-part objective inquiry into the interrelationships of the entities to be consolidated. *See Holywell Corp. v. Bank of New York*, 59 B.R. 340, 347 (S.D.Fla.1986). These seven factors (not all of which must be found to support consolidation) are:

(1) The presence or absence of consolidated financial statements; (2) The unity of interests and ownership between various corporate entities; (3) The existence of parent and intercorporate guarantees on loans; (4) The degree of difficulty in segregating and ascertaining individual assets and liabilities; (5) The existence of transfers of assets without formal observance of corporate formalities; (6) The commingling of assets and business functions; (7) The

profitability of consolidation at a single physical location.

*Ibid.* (citing *In re Donut Queen*, 41 B.R. 706, 709 (Bankr.E.D.N.Y.1984)).

Title, Section 349 of the United States Code discusses the effect of dismissal orders in bankruptcy cases. The statute provides, in relevant part, the following:

(a) Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.

(b) Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title—

. . .

(3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

11 U.S.C. § 349.

Although the plaintiff has correctly stated that once a debtor's bankruptcy case is substantively consolidated with other bankruptcy cases the assets and liabilities of the different entities are consolidated and treated as a single entity, *see In re American HomePatient, Inc.*, 298 B.R. at 164, the plaintiff is not correct, and has not cited any authority, for the proposition that the property of consolidated debtors remains in the consolidated case even if the petition of one of the debtors is dismissed. Under 11 U.S.C. § 349(a), if a debtor's bankruptcy case is dismissed, the debt belonging to the debtor is not discharged and creditors could presumably attempt to collect that debt. If the debtor files a new bankruptcy case, and the case

622

is completed and the court orders the debt discharged, all of the debt may be discharged, not just the debt associated with the new bankruptcy case.

■ However, when a debtor's bankruptcy case is dismissed, the property belonging to the debtor stays with the debtor; it does not remain with the consolidated assets of the remaining debtors. Here, the two parcels of land were titled in the name of Charlotte Bli and they reverted to her when her bankruptcy case was terminated by dismissal for failure to file a proposed plan within the time allowed by the bankruptcy court. The property, therefore, was subject to foreclosure by creditors. This principle is fortified by 11 U.S.C. § 349(b)(3), which states that after a bankruptcy case is dismissed, the debtor returns to the status he or she was in before the petition was filed. *See In re Johnson*, 210 B.R. 134, 137 (Bankr.W.D.Tenn.1997) ("Unless the court orders otherwise, the dismissal of a bankruptcy case restores the parties as far as possible to their pre-petition status."); *France v. Lewis & Coulter (In re Lewis & Coulter, Inc.)*, 159 B.R. 188, 189 (Bankr.W.D.Pa.1993) ("It is as though the bankruptcy case never had been brought.").

The Court therefore must reject the plaintiff's argument that the foreclosed parcels of land belonging to Charlotte remained somehow within the aura of the automatic stay that protected the assets of the remaining, consolidated debtors. The bankruptcy court correctly concluded that the Northeast parcel and the Portsmouth parcel remained the property of Charlotte Bli after her bankruptcy petition was dismissed and was not a part of the consolidated debtors' bankruptcy case. The Court finds no reversible error by the bankruptcy court on this issue.

C.

The plaintiffs contend nonetheless that the bankruptcy court abused its discretion by not invalidating the foreclosure sale after Charlotte Bli's bankruptcy petition was reinstated. In response, the government insists that reinstatement of a previously dismissed case does not affect the validity of a creditor's actions taken during the period of dismissal absent a finding that there was a violation of due process. The government contends that no due process violation occurred in this case and the plaintiff has failed to provide proof of inequitable conduct on the part of GreenStone, and therefore the foreclosure sale must stand.

■ As a general rule, a reinstatement of a dismissed bankruptcy proceeding does not affect the validity of a creditor's actions taken during the period the case was dismissed, unless there was a violation of due process rights. *See e.g., In re Johnson*, 210 B.R. 134, 137 (Bankr. W.D.Tenn.1997). The bankruptcy court, however, in its discretion may exercise its equitable power to avoid a foreclosure sale after it reinstates a case that was dismissed. *See G.E. Capital Mortgage Services, Inc. v. Thomas (In re Thomas)*, 194 B.R. 641 (Bankr.D.Ariz.1995).

A number of cases have discussed the due process requirement in the context of a foreclosure sale of a debtor's property during a period between dismissal and reinstatement of a bankruptcy case. For example, in *In re Acosta*, 181 B.R. 477 (Bankr.D.Ariz.1995), the bankruptcy court set aside a foreclosure sale of the debtors' residence that occurred between the dismissal and subsequent reinstatement of their Chapter 13 case because the debtors were not given actual notice of the continued foreclosure sale. In that case, a foreclosure sale of the debtors' residence initially was scheduled prior to the filing of

the debtors' voluntary petition. After the filing of the petition, the foreclosure sale was orally continued from time to time during the pendency of the bankruptcy case, as is permitted by Arizona state law. The debtors' Chapter 13 case was dismissed as the result of the debtors' failure to provide their trustee with proof that their state income tax return had been filed. The debtors subsequently filed the required return, provided proof of filing to their trustee, and filed a motion to reinstate their Chapter 13 case. The foreclosure sale occurred during the interim dismissal period but while the debtors' motion to reinstate was pending. The secured creditor was the successful bidder. The bankruptcy court held that because of the intervening bankruptcy, the secured creditor had a duty to give the debtors actual notice of the rescheduled foreclosure sale even after dismissal of the debtors' petition. The *Acosta* court relied upon the "essential right under the United States Constitution that before property can be taken and sold by a creditor, due process requirements must be met." *Id.* at 479.

Similarly, in *Great Pacific Money Markets, Inc. v. Krueger (In re Krueger)*, 88 B.R. 238 (9th Cir. BAP 1988), the bankruptcy appellate panel affirmed the decision of the bankruptcy court voiding a foreclosure sale held after dismissal of a Chapter 13 bankruptcy case where the bankruptcy case was dismissed as the result of the failure of the debtors to appear at a continued confirmation hearing when, despite being directed to do so, counsel for the secured creditor gave neither the debtors nor their counsel notice of the continued hearing. As in *Acosta*, a foreclosure sale of the debtors' residence was initially scheduled prior to the filing of the debtors' voluntary petition and then orally continued from time to time during the pendency of the bankruptcy case. Upon learning of the dismissal of their case, the debtors

obtained an *ex parte* order vacating the order dismissing the bankruptcy case and reinstating the bankruptcy case effective as of the date of dismissal. The bankruptcy judge did not set aside the foreclosure sale *ex parte,* but informed the debtors that they would have to bring a separate action to do so. The debtors filed a complaint to set aside the foreclosure sale, which resulted in the entry of an order voiding the sale and reverting the property to the debtors. The bankruptcy judge concluded that 11 U.S.C. § 105(a) gave him the equitable power to unwind the foreclosure sale due to the creditor's bad faith in not notifying the debtors of the continued confirmation hearing and due to the lack of due process. The bankruptcy appellate panel affirmed noting that "an order is void if it is issued by a court in a manner inconsistent with the due process clause of the Fifth Amendment." *Id.* at 240. Because the order dismissing the bankruptcy case was void, the panel reasoned, "the automatic stay was continuously in effect from the date the petition was filed." *Id.* at 241. Thus the foreclosure sale, which occurred in violation of the automatic stay, was deemed void and without effect. *Ibid.*

A third case also supports the position that due process requires adequate notice of a creditor's intent to foreclose. In *Tome v. Baer (In re Tome)*, 113 B.R. 626 (Bankr.C.D.Cal.1990), the bankruptcy court held that a foreclosure sale must be set aside where the foreclosing creditors did not give adequate notice of the sale after obtaining relief from the automatic stay.

However, other bankruptcy courts have refused to exercise their equitable powers to unwind a foreclosure sale. For example, in *G.E. Capital Mortgage Services, Inc. v. Thomas (In re Thomas), supra,* the bankruptcy court held that the debtors

were not entitled to have their dismissed case reinstated as of the date the debtors filed their motion to reinstate so as to avoid a trustee's sale. In that case, a foreclosure sale was pending at the time the debtors' bankruptcy petition was filed. The debtors, however, conceded that they had prior notice of the rescheduled sale dates during the pendency of their bankruptcy case. The bankruptcy case was dismissed once because of the debtors' failure to file their mailing matrix but reinstated one day later. The bankruptcy case was dismissed a second time when the debtors failed to appear for their meeting of creditors. Although the debtors at first claimed that they did not receive notice of the meeting of creditors, based on correspondence from the debtors and their statements at oral argument, the court concluded that they had received notice of the meeting of creditors but simply miscalendared it. The debtors' case was dismissed on March 13, 1995, and their motion to reinstate was filed on March 28, 1995. The debtors conceded that they knew on March 28th that the foreclosure sale on their residence was scheduled for April 4, 1995. The debtors did not (i) submit a form of order to reinstate the case, (ii) request an immediate hearing for reinstatement of the case, or (iii) request a temporary restraining order or any other injunctive relief. After the sale was conducted, the debtors sought to avoid the foreclosure sale. Their request was denied. The debtors then filed a motion for reconsideration and the creditor filed a motion for relief from the automatic stay to enable it to complete eviction proceedings. The debtors asked the court either to deem their case reinstated as of March 28, 1995, the date they filed their motion to reinstate, or to deem their case continuously pending since the date it was originally filed. The debtors relied upon *In re Krueger* as authority for the bankruptcy

court to exercise its equitable powers in their favor.

The bankruptcy court concluded that unlike *Krueger*, the debtors were accorded due process. They knew that their case had been dismissed in advance of a rescheduled foreclosure sale, and they knew the date of the rescheduled foreclosure sale, yet they took no steps to obtain injunctive relief. While the bankruptcy court criticized *Krueger* and *Tome*, and distinguished *Acosta* on its facts, it decided that those cases were nevertheless consistent in recognizing the fundamental due process requirement of notice before a debtor is deprived of property. *See Thomas*, 194 B.R. at 648. The court noted the limited circumstances under which a bankruptcy court may exercise its equitable power to avoid a foreclosure sale: "The court certainly has the power to rescind its orders, but the court does not exercise such a power which will avoid a foreclosure sale conducted pursuant to state law, if at all, unless the debtor has shown that he or she was not accorded due process." *Id.* at 650.

In this case, the plaintiffs have not demonstrated a deprivation of due process. GreenStone provided notice of the sale, and the plaintiffs, instead of seeking court relief to block the foreclosure, asked the bankruptcy court to reconsider its dismissal order. The court granted the plaintiff's motion for reconsideration, but in so doing, it did not render a decision regrading the property that was foreclosed during the period between dismissal and reinstatement of Charlotte Bli's bankruptcy case. Instead, the court informed the parties that they *could* filed a motion and brief the issue of whether the foreclosure sale was valid. *See* Gov't Br. Ex. 31, Hearing Transcript at 16–18. The court even commented in passing that it doubted the validity of the foreclosure sale. *Ibid.* The

plaintiff did not, however, follow the court's advice and waited until almost a year later to file the adversary proceeding against the defendants to set aside the foreclosure.

The bankruptcy judge sagely observed that the problem with the foreclosure sale was one that would take care of itself if the debtors had any prospect of successfully proposing and executing a plan of reorganization. Charlotte Bli had an entire year to redeem the property; she could have proposed a plan to finance the redemption and recovered the property. Instead, over a year later the bankruptcy petitions were all dismissed because none of the debtors ever filed a proposed plan. To be sure, the Bankruptcy Code is a means of allowing troubled debtors a fresh start, and indeed it is effective when debtors approach reorganization in good faith and with the intent to retire their obligations. But it ought not be a vehicle to delay the collection of valid debts when little effort is devoted to the attempted financial recovery.

The Court believes that the facts in the present case parallel those of *G.E. Capital Mortgage Services*; and the bankruptcy court did not commit error in refusing to exercise its power to avoid the foreclosure.

### D.

 The plaintiffs lastly claim that they did not have the full benefit of oral argument when they presented their request for a preliminary injunction to the bankruptcy court because Judge Pain did not give them time to argue the motion or to present testimony. Apparently, Judge Pain, who was assisting as a visiting judge in this District during a period when the bankruptcy bench through attrition had

been severely diminished, had scheduled the hearing at a time shortly before he had to return to his home court in Kentucky. The plaintiffs point to the following colloquy that took place between the government's counsel and the court at the conclusion of the hearing:

> MS. PIDGEON: Your Honor, I—would like to make some points.
>
> THE COURT: Okay. Not contained in your brief?
>
> MS. PIDGEON: Correct, concerning substantive consolidation.
>
> THE COURT: Okay. Do it briefly. I'm going to—I hate to do this, but I have a plane to catch out of Flint at 3:00. So I'm going to—I'm going to be out of here in five minutes.

October 24, 2002 Hearing, at 9.[1] The plaintiff states that the hearing ended shortly after this exchange and that as a result of this abrupt ending to the hearing, the debtor, Charlotte Bli, was not allowed to carry her burden of proof on the motion and was not allowed to present evidence on the issue of substantive consolidation.

The government observes that the record is devoid of any effort by the plaintiffs to offer testimony at the hearing. Moreover, the bankruptcy court based its decision to deny the motion for preliminary injunction on the stipulation of facts the parties filed two days earlier and its findings that, as matters of law, the foreclosure sale was valid, the automatic stay was not retroactively imposed by the reinstatement of the case, and the stay was not continued by the substantive consolidation. Any additional facts that the plaintiff wished to present therefore would be irrelevant to this determination. To the extent that the plaintiff was denied an opportuni-

---

**1.** The appellant did not provide the Court with a copy of this transcript. The text is taken from the appellant's brief at page 12.

ty to argue its case, the government argues that the defect was remedied by the subsequent motion for reconsideration, which was also denied by the bankruptcy court.

 "The touchstone of procedural due process is the fundamental requirement that an individual be given the opportunity to be heard 'in a meaningful manner'." *Howard v. Grinage,* 82 F.3d 1343, 1349 (6th Cir.1996); *Loudermill v. Cleveland Bd. of Educ.,* 721 F.2d 550, 563 (6th Cir. 1983), *aff'd,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) ("Due process requires that a hearing be held, not just 'in a meaningful manner', but also at a 'meaningful time'."). *See also Yellow Freight System, Inc. v. Martin,* 954 F.2d 353, 357 (6th Cir.1992) ("The fundamental elements of procedural due process are notice and an opportunity to be heard.").

In this case, the plaintiff has not pointed to any facts upon which the Court could conclude that the termination of a hearing in its bankruptcy case caused a fundamental failure of due process. As noted above, the parties stipulated to the pertinent facts. The record contains no request by the plaintiffs to present evidence, nor is there a suggestion that the facts to which the parties agreed were deficient or incomplete. Oral argument on the legal issues need not be allowed as a matter of course, and the issues were fully briefed by the parties. The plaintiff filed a motion requesting a rehearing and for reconsideration of the court's order denying its preliminary injunction. The court entered an order denying the motion and discussed the reasons for its decision. The Court finds no procedural shortcomings in the manner in which the bankruptcy court adjudicated the issues in this case.

## IV.

The Court finds no error in the bankruptcy court's legal rulings. Accordingly, it is **ORDERED** that the judgment of the Bankruptcy Court is **AFFIRMED.**